# Court of Appeals.

October 9, 1894.

## PEOPLE v. MORRIS SPIEGEL.

(62 St. Rep. 136; 143 N. Y. 107, affirming 9 N. Y. Cr. 60.)

1. EVIDENCE—CONFESSIONS

Where, upon the trial of an indictment, defendant's books of account, which had been seized and brought into court, were introduced into evidence without any objection on his part, on the ground that they were produced against his will, there was no compulsion within the meaning of the constitutional provision declaring that no person, in a criminal action, shall be compelled to testify against himself.

2. CRIMINAL LAW—INDICTMENT—SUFFICIENCY.

An indictment for the presentation to a fire insurance company of a false and fraudulent claim for loss by fire of property insured in several companies, was held, in this case, to contain a sufficient statement of facts.

Appeal from judgment of the general term of the supreme court in the first judicial department, entered upon an order which affirmed a judgment of the court of oyer and terminer of the city and county of New York, entered upon a verdict, convicting the defendant of the crime of presenting false proofs of loss in support of a claim upon a policy of insurance, in violation of section 579 of the Penal Code.

Charles Daniels and Abram Kling, for appellant.

John D. Lindsay, for respondent.

FINCH, J.—The defendant has been convicted of presenting to an insurance company a false and fraudulent claim for an alleged loss by fire. The indictment sufficiently charges the offense and is not open to the criticism which assailed it on the argument. The pleading alleges that the total loss was not the sum asserted in the profs presented, and that the particular claim against the company was not justly due, and that both claims were false and fraudulent to the knowledge of the defendant and were feloniously presented and in violation of the stat-

ute.    The total amount of the· loss dictated the amounts chargeable in due proportion to each of the insuring companies; and the indictment avers, not only the falsity of the total loss claimed, but specifically of the particular claim founded thereon against the company making the complaint.    That was a sufficient statement of the facts, and fairly apprised the accused of the crime with which he was charged.    Narrow and technical objections to the form of an indictment have had their day, and it is our duty not to drift back into the old uncertainty.

What the indictment charged the proof tended to establish. That there was any failure of such proof rests mainly upon a contention not borne out by the facts, that no specific claim for any specific amount was made because of an alleged modifying provision contained in the proofs of loss presented to the company.    The claim distinctly made was for a total loss to the full extent of the sum insured, and the aggregate of damages claimed was more than double the amount of the entire insurance.    There was a statement that in estimating the total loss no credit had been given for a possible salvage upon articles merely damaged, but it was also alleged as a reason for the omission that these in their damaged state had no commercial value to the insured, although subject to an appraisal.    Undoubtedly this meant that the total loss claimed might, by the action of the insurer under the policy, suffer a reduction by the amount of some value found to remain in the injured articles; but the false claim of loss remained and was made so large that its possible reduction by a salvage which the insured did not not admit would still leave the company liable for the full amount of its insurance, or at all events for more than it ought to pay.    And this very damage, left open to a possible reduction, was shown to be itself the result of fraud rather than fire, and of the agency of the insured himself. The claim presented did not cease to be vicious because left open to the reduction of an appraisal, but may have been found by the jury to have been framed to work its intended result in spite of such reduction, which the policy itself would compel, and which it was no great virtue to anticipate.    The question of fraudulent intent was thus one for the jury upon all the facts developed.

A further argument is made, founded upon the evidence fur-

nished by the books of the insured, and rests upon the contention that, by their production or proof of their contents, the accused was compelled to give evidence against himself in a criminal action. The constitutional provision is invoked that no person shall be compelled in any criminal case to be a witness against himself (Art. 1, § 6), and reference is made to the authority of Boyd v. United States, 116 U. S. 116. The general term make two answers: That no objection or exception anywhere in the case presents the question; and that a party may waive the benefit even of a constitutional provision, at least, where it does not affect matters in which the public have an interest apart from and outside of the personal right of the individual. These answers combined show an utter absence of the compulsion which the constitutional provision forbids. We are not concerned with the question whether the seizure of the defendant's books was by itself lawful or unlawful, but merely with the use made of them on the trial. There was no compulsion in that use, because it was not objected to upon that ground. The defendant might have objected; he might have resisted; he could possibly have prevented the use made of the books, but instead, he either silently permitted the evidence to be given, or at the most only questioned its general relevancy or competency. It was both relevant and competent, at least he so objected as to make its admission compulsory and against his will. And this is true even if the production and use of the books can be said to have been his own confession or admission instead of a part of the very res gestae of the crime.

It is further contended that the court erred in the charge to the jury in respect to the force and effect of the evidence given outside of that which came from Blais, who confessed himself to be both a thief and a liar, and so was unreliable as a witness. It is not necessary to add anything to the answer of the general term beyond an expression of our concurrence. That answer shows in a very satisfactory manner that the trial judge did not invade the province of the jury, and in substance only ruled that with the testimony of Blais eliminated enough evidence remained to be submitted to their judgment, and upon which, if it satisfied them beyond a reasonable doubt, they might rest

their verdict. The opinion points out how fairly and fully the questions of fact were submitted through the whole body of the charge, and that the one sentence criticized itself left the case to the judgment of the jury, both as to the disregard of Blais' testimony and as to the effect of the remaining proof.

I have read through the very voluminous record of the trial. There is much conflict of evidence; there is room for divergent inferences, and there is basis for argument on both sides; but the facts were for the jury, and their conclusion must prevail. There is no error of law which requires a new trial.

The judgment must be affirmed.

All concur, except ANDREWS, Ch. J., not sitting.

Judgment affirmed.