STATE v. GILLIAM.

1. EVIDENCE.—CONVERSATION between·defendant, deceased and witness in homicide case, some time before shooting, is competent to show relation of the parties.
2. IBID.—CORONER.—How many jurors signed coroner's verdict, is irrelevant in homicide case.
3. IBID.—IBID.—CONTRADICTION.—Defendant in homicide case cannot have the testimony of his witness corroborated by evidence taken at coroner's inquest, and such evidence cannot be used to contradict witnesses for State, when no ground therefor was laid.
4. CRIMINAL LAW—MANSLAUGHTER—ASSAULT AND BATTERY.—An instruction that the provocation which is sufficient to reduce a killing from murder to manslaughter involves the idea of an assault and battery, is not error.
5. IBID.—IBID.—INSTRUCTION that homicide caused by the negligent use of a pistol is manslaughter, is correct, and here not a charge on the facts.
6. NEW TRIAL.—There being evidence tending to show that deceased came to her death from the effects of the wound inflicted by defendant, motion for new trial was properly overruled.

Before ALDRICH, J., Newberry, February term, 1903. Affirmed.

Indictment against Henry Gilliam for murder. From sentence to life imprisonment, defendant appeals.

*Mr. Cole L. Blease,* for appellant.

*Mr. Solicitor T. S. Sease,* contra.

No arguments furnished Reporter.

June 20, 1903. The opinion of the Court was delivered by

MR. JUSTICE JONES. The defendant was indicted and tried at Newberry, February term, 1903, for the murder of his wife, Rachael Gilliam. The jury found him guilty, with a recommendation to mercy, and he was sentenced to life

imprisonment, from which judgment he now appeals upon exceptions to rulings as to the admissibility of testimony, to the charge to the jury and to the refusal of motion for new trial.

The first exception assigns error in allowing the witness, Will Hill, to testify to a conversation which took place between the defendant and the deceased some time before the homicide. The conversation was had about a week before the homicide, between the witness and the deceased, in the presence of the defendant, and was to the following effect, as stated on page 40 of the case: "Q. Tell what conversation took place? A. We was just laughing and talking as people usually do—talking about men whipping their wives, and she said: 'Henry is scared to whip me unless he gets his pistol every time.' Said, 'If me and Henry gets into a dispute on the back side of the field, he turns the plow loose and makes for the house to get his pistol and puts it in his pocket and comes back, for a common thing.' Q. What did Henry say to that? A. Henry spoke and said, 'Yes, you done told that much. Now who is going to whip me for doing it?' It seems like he got offended at her speaking that way." The testimony was competent to show the relation between the defendant and the deceased. *State* v. *Bodie,* 33 S. C., 129.

The second exception imputes error in not allowing Coroner Lindsay to state how many jurors signed the verdict of the coroner's inquest. The ruling was proper, as it was entirely irrelevant how many jurors signed the verdict of the coroner's inquest.

The third exception alleges error in not allowing defendant to introduce the testimony taken at the coroner's inquest in order to corroborate the testimony of Susan Gilliam, a witness for the defendant, and to show a contradiction on the part of other witnesses. This exception cannot be sustained. The case does not show that the testimony at the coroner's inquest was sought to be introduced for the purposes named, but, on the contrary, it

appears that the object of the attempt to introduce the inquest papers was to show whether the defendant was released on his own recognizance and what was the verdict of the coroner's jury. These matters were irrelevant to any issue before the Court. Besides this, it was not competent to *corroborate* the testimony of defendant's witness at the trial by showing that she made similar statements at the coroner's inquest, and no ground had been laid to impeach the testimony of other witnesses testifying at the trial by showing contradictory statements by them at the coroner's inquest.

The fourth exception states that the presiding Judge erred in charging the jury that a sufficient legal provocation involves the idea of assault and battery. The exception does not fully represent the charge, which was in these words: "A sufficient legal provocation involves the idea of an assault and battery, or at least some indignity offered which is calculated to throw the average man in sudden heat and passion." The Judge had previously in his charge correctly defined murder and manslaughter. In the sentence above quoted, the explanation as to what would constitute a sufficient legal provocation to reduce an intentional homicide from murder to manslaughter was rather too favorable to the appellant, as it is not true that any indignity which is calculated to throw the average man in sudden heat and passion, is "a sufficient legal provocation." For example, provocation by words only, however opprobrious, would not be sufficient to reduce a killing from murder to manslaughter, when death was caused by a deadly weapon, as is in this case. *State* v. *Levelle,* 34 S. C., 129.

The defendant, in his testimony and that of his daughter, Susan, sought to explain the killing by showing that it happened unintentionally, in a playful tussle between him and his wife, the deceased, for the possession of the pistol. To meet this defense, the Court charged as to homicide by negligence as follows: "Now, there are other kinds of manslaughter to which I must call your

attention, at least to one. That is where one is handling some dangerous weapon or implement, handles it in a careless manner, to the detriment, injury and loss of life of some one else. Then, the question is, was that death occasioned by the carelessness and negligence of the party who was handling that weapon or implement as to inflict a wound that caused the death? Negligence is the want of ordinary care; carelessness is also the want of ordinary care. (*The rule by which, in such cases as that, you are governed, is this: How do you, gentlemen, as jurors, think that a man of average sense in this position would handle a dangerous weapon or implement, under given circumstances generally? Then, under the testimony of the case you are trying, has the State shown beyond a reasonable doubt that the defendant was guilty of negligence—that is, he did act in that manner with the . dangerous ·weapon . or implement as a man of average sense and disposition under the circumstances which the testimony shows to have existed in the case—he did act in that. way, and as a result of that, he did inflict the mortal wound, as alleged in the indictment, which caused the death of the defendant, as charged; if you find it so, then that will be a case of manslaughter.*") It is asserted in the fifth exception that the portion of the charge italicised, or within the brackets above, was error, "as to the law governing such cases in this State, and being a charge upon the facts, in violation of the Constitution." It is clear that the charge was not in violation of the Constitution prohibiting judges from charging in respect to matters of fact. The exception does not specify wherein the charge is in conflict with the law as to manslaughter by negligence. In Clark's Criminal Law, 172, the following definition is given: "Involuntary manslaughter is where death is unintentionally caused: (a) In the commission of an unlawful act not amounting to a felony nor likely to endanger life, or (b) By culpable neglect of a legal duty, as (1) By negligence in performing a lawful act, (2) By neglect to perform an act required by law." At page 175, the same author shows by the citation of numerous

cases that a person who causes another's death by the negligent use of a pistol or gun is guilty of manslaughter, unless the negligence is so wanton as to make the killing murder. This exception is overruled.

The sixth exception alleges error in charging the jury as follows: "So your verdict would be one of four: 'Guilty,' which means hanging; 'guilty, with recommendation to mercy,' which means imprisonment in the State penitentiary at hard labor for life; 'guilty of manslaughter,' where the sentence is left to the discretion of the Court, or 'not guilty.'" It is not pointed out wherein this charge is erroneous. Appellant cites sec. 120, Criminal Code, but that merely defines manslaughter, and prescribes the punishment as not less than two nor exceeding thirty years at hard labor in the penitentiary. If this indicates the point of error, it was entirely harmless.

The last exception is as follows: "VII. Because the presiding Judge erred as a matter of law in refusing the defendant's motion for a new trial, when there was no testimony to prove that the deceased came to her death from the effect of the wound inflicted at the hands of the defendant; and there being none, there was no testimony to sustain the conviction of the prisoner for the crime of murder, the presiding Judge having charged the jury that the State must prove beyond a reasonable doubt that the deceased came to her death from the effects of the wound inflicted at the hands of the defendant." There was no error of law in refusing the motion for new trial, as there was evidence tending to show that the deceased came to her death from the effect of the wound inflicted by defendant. It seems that there was no *post mortem* examination by medical expert. The evidence in behalf of the State was to the effect that defendant and his wife were quarreling in their house; that defendant was heard to curse his wife and call her a liar; that his wife called him a liar; that defendant threatened to kill her if she called him another liar; that there was a scuffle between them; that two pistol shots were

heard; but when the second shot was heard, deceased was seen to fall through the door to the piazza floor; that defendant soon thereafter rode off rapidly on a mule. Very soon after that Rachael, the deceased, was found on her bed dead, with a bullet entrance wound under her left arm and the marks of another bullet hole through her clothing. Defendant's pistol was found in his trunk, with two empty cartridges, apparently freshly discharged, and a bullet answering to the calibre of his pistol was found on the floor dented or mashed. The defendant himself testified that he had taken his pistol and placed it on the top of his bureau; that she got the pistol; that he undertook to take it away from her in play, and got into a tussle, during which the pistol went off and she fell to the floor; that he then placed her on the bed and rode off for a doctor; that after dispatching a boy on for the doctor, he returned to his house and was told his wife was dead. These and other circumstances that might be detailed, surely afforded some evidence that death resulted from the wound inflicted by defendant. The exceptions are all overruled.

The judgment of the Circuit Court is affirmed.