## Court of Appeals.

November 10, 1903.

## PEOPLE v. ADAMS.

(176 N. Y. 351.)

1. CONSTITUTIONAL LAW—PERSONAL RIGHTS.

   Articles 4 and 5 of the amendments to the Constitution of the United States relating to personal rights do not apply to actions in the courts of the State of New York.

2. EVIDENCE—ADMISSIBILITY ON CRIMINAL TRIAL OF PRIVATE PAPERS ALLEGED TO HAVE BEEN UNLAWFULLY OBTAINED.

   The court when engaged in the trial of a criminal case will not take notice of the manner in which witnesses have possessed themselves of private papers or other articles of personal property, which are material and are properly offered in evidence.

3. SAME—WHEN ADMISSION OF PRIVATE PAPERS NOT VIOLATIVE OF CONSTITUTIONAL GUARANTY AGAINST COMPELLING PRISONER TO BE A WITNESS AGAINST HIMSELF—CONST., ART. 1, SEC. 6.

   The admission in evidence upon the trial of an indictment, under section 344a of the Penal Code, relating to policy playing, of private papers and property belonging to the defendant, alleged to have been unlawfully seized by police officers and introduced by the prosecution for the purpose of establishing his handwriting on certain policy slips, and to show that the office in which they were found was occupied by him, does not compel him to become a witness against himself in violation of section 6 of article 1 of the Constitution of the State of New York.

4. CRIMES—POLICY GAMBLING—CONSTITUTIONALITY OF SECTIONS 344a AND 344b OF PENAL CODE—WHAT PUBLIC OFFICERS MAY LAWFULLY BE IN POSSESSION OF APPARATUS USED IN GAME OF POLICY.

   Section 344a of the Penal Code, creating the crime of " policy " gambling and making it unlawful for any person to have in his possession the apparatus therefor, is not an unauthorized interference with the ownership of private property, and is constitutional. Section 344b, making the possession by any person other than a public officer of such apparatus " presumptive evidence of possession thereof knowingly and in violation of " the preceding section, creates no offense, but simply prescribes a rule of evidence within the power of the Legislature, and is also constitutional. Neither section depends upon the other, each being complete in itself. The public officers intended to be excepted by the Legislature are those who, in the discharge of their official duties, are necessarily at times the custodians of the apparatus, and this provision, therefore, is not objectionable as class legislation.

5. CONSTITUTIONALITY OF INDETERMINATE SENTENCE LAW—PENAL CODE, SEC. 687a.

Section 687a of the Penal Code, fixing a maximum and minimum sentence for prisoners, must be considered in connection with the law relating to prisons, permitting the parole of such prisoners, is a merciful exercise of legislative power, and is constitutional.

6. EVIDENCE—NON-EXISTENCE OF SEARCH WARRANT IMMATERIAL.

The refusal of the trial court to allow evidence as to the non-existence of a search warrant at the time of the removal of apparatus from the place claimed to have been occupied by the defendant as an office is not error, such apparatus being competent evidence and the manner of obtaining possession of it being immaterial.

People v. Adams, 85 App. Div. 390, 17 N. Y. Crim. Rep. 443, affirmed.

APPEAL from an order of the Appellate Division of the Supreme Court in the First Judicial Department, entered July 13, 1903, which affirmed a judgment of a Trial Term entered upon a verdict convicting the defendant of the crime of knowingly having possession of a writing, paper and document representing and being a record of a chance, share and interest in numbers sold in a gambling game commonly called "policy," and of knowingly having possession of papers and devices such as are commonly used in carrying on and playing the game called "policy," in violation of section 344a of the Penal Code.

The sections of the Penal Code under which conviction was had read as follows:

"§ 344a. A person who keeps, occupies or uses, or permits to be kept, occupied or used, a place, building, room, table, establishment or apparatus for policy playing or for the sale of what are commonly called 'lottery policies,' or who delivers or receives money or other valuable consideration in playing policy, or in aiding in the playing thereof, or for what is commonly called a 'lottery policy,' or for any writing, paper or document in the nature of a bet, wager or insurance upon the drawing or drawn numbers of any public or private lottery; or who shall have in his possession, knowingly, any writing, paper or document, representing or being a record of any chance, share or interest in numbers sold, drawn or to be

drawn, or in what is commonly called 'policy,' or in the nature of a bet, wager or insurance, upon the drawing or drawn numbers of any public or private lottery; or any paper, print, writing, numbers, device, policy slip, or article of any kind such as is commonly used in carrying on, promoting or playing the game commonly called 'policy;' or who is the owner, agent, superintendent, janitor, or caretaker of any place, building, or room where policy playing or the sale of what are commonly called 'lottery policies' is carried on with his knowledge or after notification that the premises are so used, permits such use to be continued, or who aids, assists, or abets in any manner, in any of the offenses, acts or matters herein named, is a common gambler, and punishable by imprisonment for not more than two years, and in the discretion of the court, by a fine not exceeding one thousand dollars, or both."

" § 344b. The possession, by any person other than a public officer, of any writing, paper, or document representing or being a record of any chance, share or interest in numbers sold, drawn or to be drawn, in what is commonly called 'policy,' or in the nature of a bet, wager or insurance upon the drawing or drawn numbers of any public or private lottery, or any paper, print, writing, numbers or device, policy slip, or article of any kind, such as is commonly used in carrying on, promoting or playing the game commonly called 'policy,' is presumptive evidence of possession thereof knowingly and in violation of the provisions of section three hundred and forty-four-a."

The facts, so far as material, are stated in the opinion.

L. Laflin Kellogg and Alfred C. Pette, for appellant.

William Travers Jerome, District Attorney (Howard S. Gans, of counsel), for respondent.

BARTLETT, J.: As this is a unanimous decision of the Appellate Division of the Supreme Court that there is evidence

supporting or tending to sustain the verdict of the jury, it is only necessary to consider the facts sufficiently to determine the questions of law presented by this appeal.

It appears that the defendant occupied an office in the city of New York, wherein was his desk, trunk, tin boxes and other articles of personal property. On a certain occasion, when the defendant was in his office, the officers of the law appeared and stated that they had a search warrant. The defendant replied, in substance, before they proceeded to execute the same, that it was not his office and that they would proceed at their peril. The officers thereupon placed the defendant under arrest and searched the premises. A large amount of papers was seized, which may be divided into two classes: (1) The papers referred to in the section of the Penal Code under which this indictment was found; (2) and papers relating to the private affairs of the defendant.

The evidence discloses in detail the manner of conducting the gambling game known as "policy," from which it appears that certain papers are sent to a central point from different offices or places in the city where the game is conducted, known as "manifold sheets." Among the papers seized in defendant's office were thirty-five hundred of these "manifold sheets," upon some of which were indorsements and entries in his handwriting. At the trial these "manifold sheets" were introduced in evidence as papers described in section 344a of the Penal Code.

The private papers of the defendant were introduced in evidence for the double purpose of furnishing standards of his handwriting, and also tending to prove that the office in which the papers relating to the game of policy were found was occupied by him. There were also other books and papers put in evidence, in the handwriting of the defendant, relating to the entries on the "manifold sheets," that need not be more particularly described.

Vol. XVII—36.

The first point made by the learned counsel for the appellant is that, by reason of the seizure of defendant's papers, as in the manner described, the defendant's constitutional right to be secure in his person, papers and effects against unreasonable searches and seizures was violated, and he was also thereby compelled to be a witness against himself in contravention of the fourth, fifth and fourteenth articles of the amendments to the Constitution of the United States, and article 1, section 6, of the Constitution of the State of New York, and section 11 of the Bill of Rights of this State.

Articles fourth and fifth of the amendments to the Constitution of the United States do not apply to actions in the State courts.

The first point, as stated, involves two distinct propositions that must be separated in considering them. The first is an alleged violation of the Bill of Rights, which protects a citizen against unreasonable searches and seizures, and the other is an alleged violation of the Constitution by compelling a person in a criminal case to be a witness against himself.

There were two classes of papers seized at the time the search warrant was executed. The legality of the seizure of the papers described in the section of the Penal Code under which the indictment was found cannot be successfully challenged; it, therefore, remains to consider the effect of seizing the private papers of the defendant.

In Greenleaf on Evidence (Vol. 1, sec. 245a) the learned author says: " It may be mentioned in this place that though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they were offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it frame issues to determine that question."

In Commonwealth v. Tibbetts (157 Mass. 519) it was held as follows: " Evidence which is pertinent to the issue is admissible although it may have been procured in an irregular or even an illegal manner. A trespasser may testify to pertinent facts observed by him, or may put in evidence pertinent articles or papers found by him while trespassing. For the trespass he may be held responsible civilly, and perhaps criminally; but his testimony is not thereby rendered incompetent. (Commonwealth v. Dana, 2 Met. 329, 337; Commonwealth v. Lottery Tickets, 5 Cush. 369, 374; Commonwealth v. Intoxicating Liquors, 4 Allen, 593, 600; Commonwealth v. Welsh, 110 Mass. 359; Commonwealth v. Taylor, 132 Mass. 261; Commonwealth v. Keenan, 148 Mass. 470; Commonwealth v. Ryan, 157 Mass. 403; 1 Greenleaf's Evidence, secs. 254a and 229; 1 Taylor's Evidence, sec. 922; 1 Bishop's Crim. Proc. [3d ed.], sec. 246.)"

In this State the same principle has been recognized in Ruloff v. People (45 N. Y. 213), and a kindred principle in People v. Van Wormer (175 N. Y. 188, 195).

The underlying principle obviously is that the court, when engaged in trying a criminal cause, will not take notice of the manner in which witnesses have possessed themselves of papers, or other articles of personal property, which are material and properly offered in evidence.

In the case before us, if there has been any illegal invasion of the rights of this defendant, by reason of alleged unlawful searches and seizures of private papers, his remedy is in an independent proceeding not necessary to be considered at this time. We do not wish to be understood as expressing an opinion in regard to the seizure of defendant's private papers. When the officers entered the defendant's office he assured them he did not occupy it and that they would proceed at their peril. It is beyond dispute that the question as to who occupied the office was most material in connecting the defendant with the " manifold sheets " and other papers seized relating to the game of policy, and that the private papers were important in this

connection. The same may be said as to the standard of defendant's handwriting.

The next question is whether this defendant was compelled to be a witness against himself in violation of the Constitution of this State. (Art. 1, sec. 6.)

The appellant's counsel places great reliance upon the case of Boyd v. United States (116 U. S. 616), holding that an act of Congress which authorizes a court of the United States in revenue cases, on motion of the government attorney, to require the defendant or claimant to produce in court his private books, invoices and papers, or else the allegations of the attorney be taken as confessed, was unconstitutional, being repugnant to the fourth and fifth articles of the amendments to the Constitution of the United States.

Article IV deals with searches and seizures and article V contains language identical with our State Constitution, already quoted, to the effect that no person " shall be compelled in any criminal case to be a witness against himself."

In the case at bar, the defendant was not sworn as a witness, nor was he required to produce any books or papers. So far as this case is concerned, as already pointed out, the manner in which the witnesses for the People became possessed of the documentary evidence is a matter of no importance. We are of the opinion, therefore, that the defendant was not, in any legal sense, called upon to be a witness against himself in this criminal proceeding.

The next point argued by appellant's counsel is that sections 344a and 344b of the Penal Code, under which the indictment was found and the conviction had, are unconstitutional and void, for the reason that the defendant has been deprived of his liberty and property without due process of law, in violation of both the Federal and State Constitutions.

We have here presented two distinct questions. We are unable to agree with the contention of appellant's counsel that these sections are to be read together. Section 344a creates the

crime of which the defendant stands convicted; it is complete in itself and is in no way dependent upon the provisions of section 344b. The latter section establishes a rule of evidence only.

As to the alleged unconstitutionality of section 344a of the Penal Code. By article 1, section 9, of the Constitution of this State, it is provided as follows: "nor shall any lottery or the sale of lottery tickets, poolselling, bookmaking, or any other kind of gambling, hereafter be authorized by law within this State."

Section 336 of the Penal Code provides: "It is unlawful to keep or use any table, cards, dice or any other article or apparatus whatever, commonly used or intended to be used in playing any game of cards or faro, or other game of chance, upon which money is usually wagered, at any of the following places;" etc.

Section 344a immediately follows a section of the Penal Code dealing with keeping betting and gambling establishments, and is an amplification of the law looking to the suppression of gambling, it being aimed at the game of "policy," so called, which offered an opportunity to the poorer classes of making trifling bets and who could ill afford to lose their small earnings.

The papers referred to in section 344a are to be regarded the same as the tools of a burglar or the general gambling apparatus which are dealt with in the Penal Code.

The Legislature, in addition to its ample general powers in dealing with the crime of gambling, has the sanction of the Constitution of the State.

The Legislature, in order to protect game, has made it an offense for a person to have in his possession game birds of the kind specified after a certain date. (Phelps v. Racey, 60 N. Y. 10, 14.) This court said in the case last cited: "The Legislature may pass many laws, the effect of which may be to impair or even destroy the right of property. Private interests must yield to the public advantage. All legislative powers, not restrained by express or implied provisions of the Constitution,

may be exercised. . . . The measures best adapted to this end are for the Legislature to determine, and courts cannot review its discretion. If the regulations operate in any respect unjustly or oppressively, the proper remedy must be applied by that body." (See, also, People v. Buffalo Fish Co., 164 N. Y. 93.)

We have in the game laws a more extreme exercise of the legislative power to interfere with the ownership of property for the public good than is disclosed in the section under consideration.

We are of the opinion that this section is constitutional.

Section 344b provides that the possession by any person, other than a public officer, of certain papers used in carrying on, promoting or playing the game commonly called " policy," is presumptive evidence of possession thereof knowingly and in violation of the provisions of section 344a.

The learned trial judge, in charging the jury, called their attention to this statute, and explained its application and limitations. To this charge no exception was taken, and the question of the constitutionality of this section, therefore, is not presented. In People v. Spiegel (143 N. Y. 107, 113) it was held that a party may waive the benefit of even a constitutional provision.

As this is a question of public importance, we will disregard the alleged waiver and consider the merits.

As already stated, this section creates no offense, but prescribes a rule of evidence, subject to certain limitations.

In People v. Cannon (139 N. Y. 32, 42, 43) this court said: " It is said the Legislature can create and define a crime, but it cannot declare what shall be prima facie evidence of its commission. Whether the crime as defined by the Legislature has been committed by the accused is a question for the court and jury, and it is claimed that no direction to the court or jury as to what shall be considered prima facie proof can be given by the Legislature. . . . The Legislature of this State pos-

sesses the whole legislative power of the People except so far as such power may be limited by our Constitution. (Bank of Chenango v. Brown, 26 N. Y. 467.) The power to enact such a provision as that under discussion is founded upon the jurisdiction of the Legislature over rules of evidence both in civil and criminal cases. This court has lately had the question before it. (Board of Commrs. of Excise v. Merchant, 103 N. Y. 143.) . . . It cannot be disputed that the courts of this and other States are committed to the general principle that even in criminal prosecutions the Legislature may, with some limitations, enact that when certain facts have been proved they shall be prima facie evidence of the existence of the main fact in question." This principle has been approved in a number of States.

The Legislature, in the section under consideration, has gone a step further and provided that the possession by any person, other than a public officer, of the various papers and writings used in carrying on, promoting or playing the game commonly called " policy," is presumptive evidence of possession thereof knowingly and in violation of the provisions of section 344a. In other words, the Legislature has cast the burden of proof upon the person who has in his possession these incriminating papers. The fullest opportunity is afforded him to rebut this statutory presumption. The exercise of this power is clearly within constitutional limitations and calculated to aid the People in prosecuting persons engaged in this form of gambling.

The appellant, in discussing this section, raises the additional point that it is class legislation, for the reason that it excepts from its provisions public officers.

It is argued that a notary public is a public officer, and that he might be knowingly in possession of these papers used in the game of policy with impunity.

It is true, if we give a literal construction to the language of this section, that the statement is warranted; but the rule is that all statutes must be reasonably construed, and in this case

it is obvious that the Legislature intended to except those public officers who, in the discharge of their official duties, were necessarily, at times, the custodians of these papers. The section under consideration is clearly constitutional.

The appellant makes the further point that the statute under which the defendant was sentenced to imprisonment for a term, the minimum of which shall be not less than one year, and the maximum shall be not more than one year and nine months, is unconstitutional.

Section 687a of the Penal Code was enacted in 1901, presumably in the interest of defendants who had never before been convicted of a felony. The fixing of a maximum and minimum sentence is to be considered in connection with the law relating to prisons. (Secs. 74 to 83, Birdseye's R. S. [3d ed.] vol. 2, pp. 2737, 2738, 2739.) In brief, it is provided (sec. 77) that the superintendent of State prisons shall cause to be kept a record of each prisoner therein confined upon an indeterminate sentence; and if it shall appear (sec. 78) to the board of commissioners of paroled prisoners that there is a reasonable probability that such prisoner will live and remain at liberty without violating the law, the board is permitted to release him on parole after service of the minimum sentence; but until the expiration of the maximum term he is not absolutely discharged, and is liable to rearrest if he violates his parole. This is a merciful exercise of legislative power which has been repeatedly approved by the Supreme Court. This form of legislation has been sustained by the courts of many other States.

The provisions to which attention has already been called, relating to the release of paroled prisoners, remove some of the objections urged by the appellant. The legislation complained of is constitutional and in the interest of the defendant who stands before the court charged with a first offense.

The appellant, in his final point, argues that the court erred to the prejudice of the defendant in refusing to allow evidence

as to the non-existence of a search warrant at the time the papers were removed from the office of defendant.

We have already pointed out that the court will not take notice of the allegation that the possession of the papers offered in evidence on a criminal trial has been unlawfully acquired.

It follows that the questions asked of the witness Cuff were immaterial. The fact that an officer, engaged in the search of defendant's office for papers, testified that there was a search warrant does not vary the situation.

The judgment of conviction and the order appealed from should be affirmed.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, MARTIN and VANN, JJ., concur.

Judgment of conviction and order affirmed.