8543

## STATE v. McINTOSH.

1. EVIDENCE—CONSTITUTIONAL LAW.—Taking a shoe from a defendant in jail charged with a felony and comparing it with a track at the scene of the crime, is not compelling a party to be a witness against himself under the Constitution, whether the shoe was taken from him lawfully or not.

2. EVIDENCE—DECLARATIONS.—Where several persons are charged with a crime and two of them make statements in writing to the sheriff, which when read to the other parties they denounced as false, the statements are not competent to contradict the declarants as witnesses in the case nor as independent evidence against those on trial.

3. IBID.—IBID.—That a witness made a statement off the stand to save himself is admissible as effecting his credibility.

Before SHIPP, J., Florence, July, 1912.    Reversed.

Indictment against Harry McIntosh and John Williams. Defendants appeal.

*Messrs. McNeill & Oliver, Willcox & Willcox* and *Henry E. Davis,* for appellant, cite: *Statement of parties arrested with defendants are inadmissible:* 36 S. C. 524; 49 S. C. 410; 89 S. C. 234; 12 Cyc. 423; 40 S. C. 481; 48 S. C. 136; 61 S. C. 292.

*Solicitor J. Monroe Spears* and *Mr. Walter H. Wells,* contra.

*Solicitor Spears* cites: *Statements made in presence of defendants are competent: State* v. *Edwards,* 13 S. C.; *State* v. *Major,* 70 S. C.; *State* v. *Senn,* 32 S. C.; *State* v. *Sudduth,* 74 S. C.; 79 S. C. 286.

May 12, 1913.    The opinion of the Court was delivered by

MR. JUSTICE HYDRICK.    On March 6, 1912, Andrew Jackson, a little boy, eight or ten years old, of the city of

Florence, disappeared. On the second day thereafter, his dead body was found in an empty box car, on the repair tracks of the railroad company. The circumstances indicated that he had been murdered. The shoe tracks of a man were found leading to and from the car. They showed certain peculiar characteristics by which it was thought the shoe that made them might be identified.

A few days after the discovery of the body, four colored boys, William Foxworth and Freddie McIntosh, and the defendants, Harry McIntosh and John Williams, were arrested and detained in the city jail on suspicion of being guilty of the murder. While they were in jail the chief of police ordered the defendant, Harry McIntosh, to take off his shoe and give it to him, and he did so. The shoe was compared with the tracks found near the car, and it was put on the foot of another person, who made a track beside one of them for the purpose of comparison. The shoe and testimony of the similarity of the track made by it to those going to and from the car was admitted in evidence against the objection of the defendant, McIntosh.

After the four boys had been transferred to the county jail, William Foxworth and Freddie McIntosh made statements to the sheriff implicating the defendants. These statements were reduced to writing by the sheriff and signed by William and Freddie. The sheriff then took these boys into the presence of the defendants and read the statements over in their presence and hearing, and asked William and Freddie if they were correct and true, and both said they were, but the defendants both said that they were false, and that the other boys had made them to exculpate and save themselves. At the trial the State put up William and Freddie as its witnesses. William's testimony was, with slight variation, according to his statement. He admitted, however, on cross-examination, that when he was first put in jail and asked if he knew anything about the murder, he had denied any knowledge of it, and said his reason for

doing so was that he was afraid he would get himself into it. He said, also, that the sheriff told him that, if he knew anything about it it would be better for him to tell it, and that if he didn't tell it and get himself out, he (the sheriff) would get all four of them. Freddie denied the truth of his statement in every material particular, and swore that it had been extorted from him by fear and cruel treatment. The sheriff denied that the statements had been obtained by *duress,* and said that they were voluntary; but he admitted that, when he read them over in the presence of the defendants, both defendants said they were not true, and that the boys had made them to get out of it themselves. After William and Freddie had testified at the trial, the sheriff was allowed to prove their statements to him, and they were admitted in evidence, against the objection of defendants.

The first exception assigns error in admitting in evidence Harry McIntosh's shoe, and the testimony tending to show that the tracks at the car were made by it, on the ground that it violated the inhibition of the Constitution (sec. 17, art. 1) that no person "shall be compelled in any criminal case to be a witness against himself." The admission of the evidence did not violate the constitutional right of the defendant. In *State* v. *Atkinson,* 40 S. C. 363, 18 S. E. 1021, certain pieces of newspaper taken from the room of the defendant, John Atkinson, which the witness had entered without authority of law, were admitted in evidence for the purpose of showing that they corresponded with pieces of paper picked up at the scene of the homicide, which were supposed to have been the wadding of the gun with which the fatal shot was fired. Their admission was sustained. The Court quoted with approval the following from 1 Gr. Ev., sec. 254a: "It may be mentioned in this place that though papers and other subjects of evidence may have been *illegally taken* from the possession of the party against whom they were offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility, if

they are pertinent to the issue. The Court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question." See, also, *Adams* v. *New York,* 192 U. S. 585, 48 L. Ed. 575; *State* v. *Garrett,* 71 N. C. 85, 17 Am. Rep. 1, 30 A. & E. Enc. L., 2 Ed. 1159.

The Court erred in admitting the statements made to the sheriff by William Foxworth and Freddie McIntosh. They were not admissible to contradict the witness. *State* v. *McKay,* 89 S. C. 234, nor to corroborate them. *State* v. *Thomas,* 3 Strobh. 269; *State* v. *Scott,* 15 S. C. 432; *State* v. *Gilliam,* 66 S. C. 419, 45 S. E. 6; *State* v. *McDaniel,* 68 S. C. 304, 47 S. E. 384; nor as independent evidence, on the ground that they were made in the presence of the accused. Statements made in the presence of a party are generally admissible, if he remains silent when they are made, and the circumstances are such that he can speak, and naturally would or ought to respond to them. In such circumstances his silence may afford ground for inferring that he acquiesces in the truth of the statements. But where the situation is such that it would be improper for him to respond, statements made to him or in his presence are inadmissible. *State* v. *Senn,* 32 S. C. 392, 11 S. E. 292. So, also, if he positively and unequivocally denies the truth of such statements, as was done in this case, they are inadmissible. Chanc. Mod. Ev., sec. 1421, 12 Cyc. 423. The admission of such testimony would violate the rule against hearsay, and permit proof of an issue by fabricated testimony.

There was no error in refusing to strike out the testimony of William Foxworth given at the trial. The fact that he testified, on cross-examination, that he made the statement, which was introduced in evidence, to save himself, went only to the credibility of his testimony, not to its admissibility.

As there must be a new trial, it would not be proper to discuss the testimony. It is enough to say there was no error in refusing to direct a verdict of acquittal as to the defendant, John Williams. The assignments of error in the charge are unsubstantial and cannot be sustained.

Reversed.