11027

STATE v. GREEN

(113 S. E., 317)

1. CRIMINAL LAW—ERROR IN ADMITTING EVIDENCE HELD CURED BY INSTRUCTIONS TO DISREGARD.—Any error in admitting incompetent testimony concerning tracks in which defendant was compelled to put his foot was cured, where the Court stated to the jury that he had made a mistake in admitting it and instructed them to disregard it.

2. CRIMINAL LAW—EVIDENCE CONCERNING BUTTON TAKEN FROM DEFENDANT BY FORCE BEFORE HIS ARREST AND WITHOUT SEARCH WARRANT NOT INADMISSIBLE.—Evidence in regard to a cuff button taken from defendant by force before his arrest and without a search warrant was not for that reason inadmissible.

3. CRIMINAL LAW—ADMISSION OF EVIDENCE CONCERNING BUTTON TAKEN FROM DEFENDANT BEFORE ARREST HELD HARMLESS.—Where one of defendant's cuff buttons was found at the scene of an attempted rape, evidence concerning another cuff button, taken from him by force and before his arrest without a search warrant, if inadmissible, was harmless, where it had nothing to do with the case and proved nothing.

4. CRIMINAL LAW—STATEMENTS IN ACCUSED PRESENCE ADMISSIBLE.— Statements made in the presence of accused by a third person were admissible.

5. CRIMINAL LAW—TESTIMONY AS TO STATEMENTS OF POLICEMAN HELD HEARSAY AND INADMISSIBLE.—Testimony sought to be elicited concerning statements made by one of the rural policemen investigating a crime was hearsay and inadmissible.

6. CRIMINAL LAW—DEFENDANT'S STATEMENTS TO SHERIFF WHILE IN JAIL ADMISSIBLE IN ABSENCE OF COERCION OR IMPROPER CONDUCT.— Statements by defendant to the Sheriff while in jail were admissible, where there was nothing to show any improper conduct on the Sheriff's part, or any coercion.

7. CRIMINAL LAW—NOT ERROR TO PERMIT WITNESS TO SAY TESTIMONY OF OTHERS IS TRUE.—It was proper to permit a witness to say, subject to the right of cross-examination, that the testimony of two other witnesses was true.

8.  RAPE—FINDING OF DEFENDANT'S CUFF BUTTON ON BED HELD TO PRE-
    VENT DIRECTION OF VERDICT.—On trial for attempt to. rape little
    girl while in bed, where defendant's cuff button was found on the bed,
    and its presence there was unexplained, a verdict for defendant
    could not be directed.

9.  CRIMINAL LAW—CHARGE AS TO INTENT TO RAPE HELD NOT CHARGE
    ON THE FACTS.—On trial for attempted rape, charge that intent must
    be inferred from circumstances, and that act which from one might
    be an act of love might from another be an act of offense, or worse,
    was not a charge on the facts.

Before McIVER, J., Sumter.   October, 1919.   Affirmed.

Wilkie Green, convicted of attempted rape, and appeals.

*Messrs. Tatum & Wood,* for appellant, cite: *Evidence
obtained in illegal search is inadmissible:* 104 S. C., 146;
50 S. C., 363.   *Statements made by third parties in presence
of accused inadmissible:* 94 S. C., 439.

*Messrs. F. A. McLeod, Solicitor,* and *Jennings & Harby,*
for respondent.

October 9, 1922.

The opinion of the Court was delivered by Mr. JUSTICE
FRASER.

The appellant was tried and convicted of attempted rape.
A little girl about 12 years old was sleeping in a room
adjoining the room in which her father and mother were
sleeping.   In the night she was waked up by the presence
of a knee of some one on her body.   She called for her
father, and some one jumped from her bed and ran
through another room and went out of the window.   Her
father responded promptly to her call for help, and found a
window in the adjoining room open, and some footprints
on the ground under the window.   The Sheriff was notified
and went to the place of the crime the next morning.   When
he got there he was handed a sleeve button that had been
found that morning on the bed on which the little girl had
been sleeping, when attacked.   The Sheriff was accompa-

nied by his deputy and two rural policemen. They took the sleeve button to a cotton house nearby, and showed it to some men and boys there, and asked if any of them knew anything about the ownership of the cuff button referred to as the "sharp button." They all denied any knowledge of it. The appellant was one of the crowd, and in a few minutes appellant left the crowd and walked in the direction of his home. Some one called to him to come back and help with the loading of the cotton. The appellant refused to return, saying that he was going for his breakfast. The Sheriff and his posse then hurried to the home of the appellant, and got there before he did. When the appellant got to his home, he .went into the house, followed by the Sheriff and his posse. The appellant walked through the front room into another room and shut the door. One of the rural policemen opened the door and went in. He found the appellant working with the sleeve of a shirt and had something in his hand. The policeman made him open his hand, and took from his hand another sleeve button called herein the "round button." They then arrested the appellant, and took him to the house of the little girl, and told him to take off his shoes and put his foot in the track. The foot fit the track.

On the trial of the case, evidence was admitted as to the track, a statement made by another boy in the presence of the appellant, and also the cuff button taken from the accused. All of this was admitted over objection. The presiding Judge at first admitted the testimony as to the tracks, but later, coming to the conclusion that he had made a mistake as to the evidence as to the tracks, frankly stated that he had made a mistake, and carefully instructed the jury to disregard the evidence as to the tracks. The appellant did not go on the stand, but moved for a direction. of a verdict of not guilty. This was refused, and the appellant was convicted and appealed.

I. The first allegation of error we will consider is as to the evidence in reference to the tracks. It is unprofitable to consider the effect of striking out incompetent evidence. The rule is too clear to require the citation of authority that the error in admitting incompetent testimony is cured by a clear statement by the trial Judge, and instruction to the jury to disregard the incompetent evidence. The exception that raises this question is over-ruled.

II. The next question to be considered is the evidence in regard to the cuff button, taken from the appellant by force and before the appellant was arrested, without a search warrant. In *State v. Atkinson,* 40 S. C., 371; 18 S. E., 1024; 422 Am. St. Rep·, 877, we find:

"The question now presented for our decision is not whether the persons who found the pieces of paper in the room of the defendant, John Atkinson, violated any of his legal rights by entering his room without authority, but whether the papers there found could be offered in evidence in the case; for, while it may be possible that it was a technical trespass to enter his room without authority, yet it does not by any means follow that the pieces of paper there found could not be offered in evidence. For as is said in 1 Greenleaf on Evidence, Section 254, a: 'It may be mentioned in this place that, though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility, if they are pertinent to the issue. The Court will not take notice of how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question.' "

This was quoted with approval in *State v. McIntosh,* 94 S. C., 441; 78 S. E., 327. It is said, however, that a later case has overruled these cases, to wit: *Blacksburg v. Beam,*

104 S. C., 146; 88 S. E., 441; L. R. A., 1916E, 714. *State v. Harley,* 107 S. C., 307; 92 S. E., 1034, construes the case of *Blacksburg v. Beam* and distinctly holds that it is not in conflict, and is based upon other grounds.

We are told that the case of *Weeks v. United States,* 232 U. S., 383; 34 Sup. Ct., 341; 58 L. Ed., 652 L. R. A., 1915B, 834 Ann. Cas., 1915C, 1177, is in conflict with the Atkinson and McIntosh cases and we should overrule our cases on this subject. A careful study of the Weeks Case will show, not only that it does not conflict with our cases, but sustains them. Weeks was indicted in the District Court for the Western District of Missouri. His rooms were searched without warrant, and evidence of the crime taken from his rooms. Weeks brought his action to recover his property illegally seized. The District Court ordered a return of all papers, except those to be used in the prosecution of Weeks, and these papers the government was allowed to keep and use. From this order Weeks appealed. The Supreme Court, in its opinion by Mr. Justice Day, says:

"It is thus apparent that the question presented involves the determination of the duty of the Court with reference to the motion made by the defendant for the return of certain letters," etc.

Again:

"The accused, without awaiting his trial, made timely application to the Court for an order for the return of these letters, as well as other property."

There was no effort of the appellant in this case to regain the possession of his property before trial. Again we quote from the Weeks case:

"The same point had been ruled in *People v. Adams,* 176 N. Y., 351; 63 L. R. A., 406; 98 Am. St. Rep., 675; 68 N. E., 636, from which decision the case was brought to this Court, where it was held that, if the papers seized in addition to the policy slips were competent evidence in the case, as the

Court held they were, they were admissible in evidence at the trial; the Court saying (176 N. Y., 358; 68 N. E., 638; 63 L. R. A., 406; 98 Am. St. Rep., 6751) : 'The underlying principle obviously is that the Court, when engaged in trying a criminal cause, will not take notice of the manner in which witnesses have possessed themselves of papers or other articles of personal property, which are material and properly offered in evidence.' This doctrine thus laid down by the New York Court of Appeals, and approved by the Court, that a Court will not, in trying a criminal cause, permit a collateral issue to be raised as to the source of competent testimony, has the sanction of so many State cases that it would be impracticable to cite or refer to them in detail. Many of them are collected in the note to *State v. Turner,* 136 Am. St. Rep., 129; 135 et seq. After citing numerous cases the editor says: 'The underlying principle of all these decisions obviously is that the Court, when engaged in the trial of a criminal action, will not take notice of the manner in which a witness has possessed himself of papers or other chattels, subjects of evidence, which are material and properly offered in evidence. *People v. Adams, supra.* Such an investigation is not involved necessarily in the litigation in chief, and to pursue it would be to halt in the ordinary progress of a cause, and consider incidentally a question which has happened to cross the path of such litigation, and which is wholly independent thereof.' "

We see no conflict. The rule contended for would paralyze the administration of justice in many cases. The pickpocket could never be convicted. You know you had your pocketbook just before you met him. You know you did not have it just after he passed. You seize him—call an officer. The thief is searched, and the pocketbook is found on him. The only possible evidence of his guilt is his immediate possession of the stolen property, and yet we are asked to hold that he must go free, because he was arrested

and searched by force without a warrant. . That is not the law in the Federal or State Courts.

Even if the appellant's contention is correct (it is not), it was harmless error. The objection was to the round cuff button. The round cuff button had nothing to do with the case. It proved nothing. The "sharp cuff button" found at the place of the crime did prove much. This was not taken by force, and introduced without objection. This point cannot be sustained.

III. We have been cited to no authority that excludes statements made in the presence of the accused, and we know of none.

IV. When the Sheriff was on the stand, he was asked as to some statements made by one of the rural policemen. It was clearly hearsay and inadmissible.

V. The statements made by the prisoner to the Sheriff while the prisoner was in jail. That objection cannot be sustained, as there is nothing in the case to show any improper conduct on the Sheriff's part, or any coercion.

VI. One witness was allowed to say that the testimony of two other witnesses was true. That was proper, subject to the right of cross-examination, and that right was allowed.

VII. His Honor could not have directed a verdict. The presence of the appellant's cuff button on the bed of the little girl demanded explanation, and there was no attempt to explain it.

VIII. The presiding Judge did not charge on the facts. He said that intent must be inferred from circumstances, and that an act, which from one might be an act of love, might from another be an act of offense or worse.

The judgment is affirmed.

CHIEF JUSTICE GARY and JUSTICES COTHRAN and MARION concur.

MR. JUSTICE COTHRAN: I concur, and for the information of the bar refer to an exhaustive article upon the subject by Mr. Wigmore, which is published in a recent issue of the American Bar Association Journal.