13521 ·

STATE v. QUICK

(167 S. E., 19)

*Messrs. J. K. Owens* and *J. J. Evans,* for appellant,

*Messrs. M. J. Hough, Solicitor,* and *Tison & Miller,* for the State,

December 5, 1932.

The opinion of the Court was delivered by Mr. Justice Stabler.

Under an indictment for the murder of one Alton Stanton, the defendant, May Quick, was found guilty of involuntary manslaughter and sentenced to imprisonment for three years.

It appears from the record that the husband of the defendant ran a small country store and filling station, a few miles south of Bennettsville, in Marlboro County. To the rear of the storeroom were two or three other rooms that were used by the Quicks as a residence. On the afternoon of March 12, 1931, the defendant and her husband visited a Mr. and Mrs. McManus in Darlington County, near Society Hill, leaving the store and filling station in charge of a

young man by the name of George Moore. While at Society Hill, Quick became so intoxicated that he was unable to travel, and Mrs. McManus agreed to ride home with the defendant, who desired to return to the store and filling station that evening for the purpose of closing them for the day. On the way the McManus woman began drinking, and by the time she arrived at the Quick home was well under the influence of whiskey.

Bruce Atkinson, a witness for the State, testified that about 10 or 11 o'clock on the evening in question, he, with Alton Stanton and Coke Brown, drove out from Bennettsville to the Quick filling station, where he found George Moore and a few colored people; that after he was there for a short while, the defendant, accompanied by Mrs. McManus and a man, came into the storeroom from the rear; that the McManus woman, who appeared to be drunk, became noisy and began to curse, and that the defendant told her two or three times to be quiet, but she continued to use profane language; that at the time Stanton was sitting on an ale crate, and the others were standing around and about in the storeroom; that as the McManus woman refused to quiet down, the defendant walked up to George Moore and asked him if he had a pistol; that "when she asked for the gun, I turned to Stanton and said, 'Let's go.' I didn't see her pull the gun out, but I heard a shot, and, naturally, we all tore out for the door"; that several shots were fired in rapid succession, and that when Stanton was about twenty feet from the door, he "keeled over" from a wound in his hip, which proved to be mortal; that the defendant, after those in the storeroom had gotten out, shot twice through the open door; and that the witness and Brown also received wounds. Other witnesses for the State testified, substantially, to the same effect.

The defendant, while admitting that she fired the shot that killed Stanton, testified that she did not mean to hurt any one; that she was trying to quiet the McManus woman,

who was drunk, very boisterous, and using profane language; that she asked her to be quiet and to go into the rear room and lie down, but she would not do so; that defendant merely intended to shoot through the floor to scare her, but that the bullet went at such an angle through the counter as to strike Stanton and mortally wound him. Defendant also admitted that, after everybody had fled from the room except the McManus woman, she fired several shots through the open door, but testified that by doing so she did not intend to hit any one, but only to scare the McManus woman.

In response to this defense of accidental killing, the trial Judge charged the jury as follows: "Where one is guilty of the want of slight care in the handling of a deadly instrumentality, that would be gross negligence, and if death result as the direct, proximate cause from that gross negligence, that would be manslaughter, involuntary manslaughter; and the law is, that while it is an unintentional killing, yet the theory of the law is that such gross negligence implies intent; and gross negligence, as I have indicated, and as it is defined to be, is the want of slight care under all of the circumstances surrounding the person whose conduct you have under investigation."

The expression, "the want of slight care is gross negligence," was used by the Court several times; and after charging the appellant's tenth request, having to do with the law relating to unintentional, accidental, and excusable killing, the trial Judge again used the same language; and he also charged the following in connection with the eleventh request: "I charge you that, gentlemen. I think that means that want of due care in the ordinary language of the law is not sufficient to base a verdict of involuntary manslaughter upon; there must be something more than want of ordinary care, that is, there must be want of slight care, that is, it must be gross negligence."

The appellant contends that the words, "the want of slight care is gross negligence," were misleading and "nullified the

force and effect of the law providing that ordinary negligence upon the part of the defendant would not constitute manslaughter." It is urged that this expression is susceptible of two meanings; one being, upon close analysis, that a person who fails to exercise some care is guilty of gross negligence; the other, as understood by laymen and those from whom a jury is selected, that slight carelessness is gross negligence.

We are not impressed with appellant's contention. Assuming, as we must, that jurors are men of intelligence and of fair understanding, it is highly improbable that they would, as contended, construe "the want of slight care" to mean "slight carelessness," as the two expressions are directly opposed in meaning. But if appellant's contention were conceded to be true, which is not the case, she has no good cause to complain, as the charge as made was more favorable to her than she was entitled to. She admitted that she shot the deceased with a pistol, a deadly weapon, but pleaded accidental homicide. The trial Judge charged that, in these circumstances, *that want of due care* would not be sufficient upon which to base a verdict of involuntary manslaughter. This was error. In *State v. Morgan,* 40 S. C., 345, 18 S. E., 937, it was held that: "Where one seeks to be excused for taking the life of another with a deadly weapon, on the ground of accident, it must appear that due care was exercised in handling such weapon."

In *State v. Gilliam,* 66 S. C., 419, 45 S. E., 6, 7, the defendant was tried for the murder of his wife. He sought to explain the killing by showing that it happened unintentionally, in a playful tussle between him and her for the possession of a pistol which he claimed was accidentally discharged. To meet this defense, the trial Judge charged as to homicide by negligence as follows: "Now, there are other kinds of manslaughter to which I must call your attention—at least to one; that is, where one is handling some dangerous weapon or implement—handles it in a careless manner, to

the detriment, injury, and loss of life of some one else. Then the question is, was that death occasioned by the carelessness and negligence of the party who was handling that weapon or implement as to inflict a wound that caused the death? Negligence is the want of ordinary care. Carelessness is also the want of ordinary care. (The rule by which, in such cases as that, you are governed, is this: How do you, gentlemen, as jurors, think that a man of average sense in this position would handle a dangerous weapon or implement, under given circumstances generally? Then, under the testimony of the case you are trying, has the State shown beyond a reasonable doubt that the defendant was guilty of negligence—that is, he did act in that manner with the dangerous weapon or implement as a man of average sense and disposition, under the circumstances which the testimony shows to have existed in the case—he did act in that way, and, as a result of that, he did inflict the mortal wound, as alleged in the indictment, which caused the death of the defendant, as charged, if you find it so, then that will be a case of manslaughter.)" Gilliam excepted to this charge on the ground that it was in conflict with the law as to manslaughter by negligence. This Court, in overruling the exception, said: "In Clark's Criminal Law, 172, the following definition is given: 'Involuntary manslaughter is where death is unintentionally caused: (a) In the commission of an unlawful act, not amounting to a felony, nor likely to endanger life; or (b) by culpable neglect of a legal duty; as (1) by negligence in performing a lawful act; (2) by neglect to perform an act required by law.' At page 175 the same author shows, by the citation of numerous cases, that a person who causes another's death by the negligent use of a pistol or gun is guilty of manslaughter, unless the negligence is so wanton as to make the killing murder."

*State v. Tucker*, 86 S. C., 211, 68 S. E., 523, 524, was a case in which the defendant was charged with murder. He pleaded that he accidentally shot the deceased with a pistol

and offered testimony tending to support the plea. The Court's instructions to the jury, as to involuntary manslaughter, were substantially the same as those in the *Gilliam case*. Tucker excepted to the charge, and on appeal this Court said: "The point raised has been expressly ruled against appellant's contention in the case of *State v. Gilliam,* 66 S. C., 423, 45 S. E., 6, which sustained a charge like the one complained of, and held that a person who causes another's death by the negligent use of a pistol or gun is guilty of manslaughter, unless the negligence is so wanton as to make the killing murder."

See, also, *State v. Revels,* 86 S. C., 213, 68 S. E., 523, where the Supreme Court held: "The testimony was sufficient to warrant an inference that the homicide was caused by the negligent handling of the loaded gun, within the definition of involuntary manslaughter as declared and enforced in *State v. Gilliam,* 66 S. C., 422, 45 S. E., 6."

The defendant, *State v. Badgett,* 87 S. C., 543, 70 S. E., 301, 302, was indicted for the murder of one Bezina Suber, who was shot by him with a pistol. The defense was accidental homicide, and the defendant was convicted of manslaughter. The trial Court, upon request, charged the jury that in order to convict they should be satisfied beyond a reasonable doubt that the death of the deceased was the direct result of the gross negligence of the defendant in the handling of the pistol. This Court, on appeal, held that the request should have been refused for the reason, *inter alia,* that "the *negligent* handling of a loaded gun or pistol, causing death, is sufficient to support a verdict of manslaughter," citing the *Gilliam* and *Tucker cases.*

See, also, *State v. Causer,* 87 S. C., 516, 70 S. E., 161, where this Court considered the question "whether the negligent handling of a loaded gun causing death will support a verdict for involuntary manslaughter." The Court held that this question, under the authority of the *Gilliam, Tucker* and *Revels cases,* should be answered in the affirmative, say-

ing: "We are satisfied that the decisions were correct. The charge of murder involves a charge of manslaughter, and therefore necessarily involves both voluntary and involuntary manslaughter. The latter includes homicide by the negligent handling of a loaded gun."

We know of no decision of this Court changing the rule of law laid down in these cited cases. The appellant relies upon *State v. Davis,* 128 S. C., 265, 122 S. E., 770, 771. The defendant in that case claimed that the injury which caused the death of his wife was due to his stumbling over a chair as he attempted to carry her to the bed, after she had fallen in an epileptic fit. In response to this defense, the trial Judge charged the jury that a homicide, which was the result of simple negligence on the part of the defendant, would constitute manslaughter. This Court, in reversing the Court below, said: "There may be circumstances connected with the homicide, such as the situation of the parties, the character of the instrumentality carelessly handled, and others, which may convert an act, otherwise one of simple negligence, into gross or reckless negligence, and justify a conviction of manslaughter or even murder; but it was manifest error to charge that in every instance, regardless of the circumstances, an act of ordinary negligence will constitute manslaughter."

We do not think that the decision in the *Davis case* supports appellant's contention. The use of a deadly weapon by the accused in the death of the deceased was not there involved; and it is to be observed that the Court went no further than to hold that an act of ordinary negligence will not constitute manslaughter in every instance, regardless of the circumstances. This holding is not in conflict in any way with the rule of law, laid down in the cited cases, that a person who causes another's death by the *negligent* use of a *deadly weapon* is guilty of involuntary manslaughter, unless the negligence is so wanton as to make the killing murder.

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS JUSTICES CARTER and BONHAM concur.