7598

### STATE v. REVELS.

MANSLAUGHTER—NEGLIGENCE.—The testimony here warrants an inference that the homicide was caused by the negligent handling of a loaded gun, which would support a conviction of involuntary manslaughter.

Before KLUGH, J.; Marlboro, October, 1909. Affirmed.

Indictment against French Revels for murder.  From sentence for manslaughter, defendant appeals.

*Messrs. Townsend* and *Rogers,* for appellant, cite: *Involuntary manslaughter:* 9 Ency., 588.  *Lawful act:* 40 S. C., 361.

*Solicitor J. Monroe Spears,* contra.

July 4, 1910.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES.  The defendant was convicted of involuntary manslaughter and sentenced to two years on the public works of the county.

The only question involved in the exceptions is whether there was any testimony tending to show involuntary manslaughter.

There was testimony that on the night of the homicide, there was an ice cream supper given at the home of defendant, and that deceased, James Henry Jacobs, who was brother-in-law of defendant, was present assisting the defendant, appearing to be partner.  A crowd was present. In the yard a man and a boy were quarreling.  Defendant told them he was not going to have any fuss there, and ordered the man, Smith, to shut up or get out, and Smith replied with an oath that he would hush or get out when he got ready.

Defendant walked off saying that he would scatter the crowd, went into his house, and was returning along the passage in the direction of the front door with a cocked gun in his hand, when Allen Tolson caught hold of the gun and requested defendant to put it up lest he cause trouble, and defendant said that he was not mad, that he would not hurt anyone.  The defendant told Tolson to turn the gun loose; it was cocked.  About the time Tolson turned the gun loose, the deceased, Jacobs, took hold of

the barrel end and they were pulling at the gun when it fired, the load striking deceased about the knee, from which wound he died. Immediately after the shooting defendant said he would not have done it for anything in the world, and walked out of the house. Before Jacobs died he said he was not mad with defendant and would not hold it against him.

The testimony was sufficient to warrant an inference that the homicide was caused by the negligent handling of the loaded gun, within the definition of involuntary manslaughter, as declared and enforced in *State* v. *Gilliam,* 66 S. C., 422, 45 S. E., 6.

The judgment of the Circuit Court is affirmed.