## 10066

### STATE v. HANAHAN *ET AL.*

#### (96 S. E. 667.)

1. CRIMINAL LAW—SEVERANCE—DISCRETION OF COURT.—Where defendants in a manslaughter prosecution were indicted in the same indictment, but not jointly charged, it was within the discretion of the trial Court to grant a separate trial.

2. CRIMINAL LAW — MANSLAUGHTER — INSTRUCTIONS.—In a prosecution for manslaughter through negligent operation of automobiles, an instruction relating to the definition of "involuntary manslaughter" was not erroneous when considered in its relation to the entire charge.

3. CRIMINAL LAW — MANSLAUGHTER — INSTRUCTIONS.—In a prosecution for involuntary manslaughter due to reckless driving of automobiles, an instruction incorporating an incident from a Supreme Court case *held* not erroneous as charging on the facts.

4. CRIMINAL LAW—INVOLUNTARY MANSLAUGHTER—INSTRUCTIONS.—In a prosecution for involuntary manslaughter due to reckless driving of automobiles, an instruction was not erroneous as intimating that in the Court's opinion one who negligently uses an automobile and thereby causes a homicide is as guilty of manslaughter as one who causes death through the careless use of firearms.

5. HOMICIDE — INSTRUCTIONS.—In a prosecution for involuntary manslaughter due to reckless driving of automobiles, an instruction *held* not erroneous as charging the jury as a matter of law that an automobile is a deadly weapon the careless use of which subjects the user to the same liability as the careless use of firearms.

6. HOMICIDE — INVOLUNTARY MANSLAUGHTER—INSTRUCTIONS.—In prosecution for involuntary manslaughter due to reckless driving of automobiles, an instruction *held* not erroneous as charging that the careless use of an automobile is an unlawful act.

7. HOMICIDE—INVOLUNTARY MANSLAUGHTER—INSTRUCTIONS.—In a prosecution for involuntary manslaughter due to recklessly driving automobiles, an instruction as to negligence arising from exceeding speed limits *held* not to state an erroneous proposition of law.

8. HOMICIDE—INVOLUNTARY MANSLAUGHTER—INSTRUCTIONS.—In a prosecution for involuntary manslaughter due to recklessly driving automobiles, an instruction as to negligence *held* not misleading.

9 HOMICIDE—INVOLUNTARY MANSLAUGHTER—INSTRUCTIONS.—In a prosecution for involuntary manslaughter due to recklessly driving automobiles, an instruction as to the unlawful infliction of injuries *held* not erroneous as being incomplete.

10. HOMICIDE—INVOLUNTARY MANSLAUGHTER—INSTRUCTIONS.—In a prosecution for involuntary manslaughter due to recklessly driving an automobile, an instruction *held* not erroneous as stating that the infliction of an injury causing death would make one liable without regard as to how it was inflicted.

11. CRIMINAL LAW — INSTRUCTIONS.—In a prosecution for involuntary manslaughter due to recklessly driving an automobile, an instruction *held* not erroneous as arraying the facts against defendant.

12. HOMICIDE—INVOLUNTARY MANSLAUGHTER—INSTRUCTIONS.—In a prosecution for involuntary manslaughter due to recklessly driving an automobile, an instruction that the evidence must be satisfactory beyond a reasonable doubt that the injury was brought about by negligence, which was the proximate cause, was not subject to exception that one is not necessarily guilty of a crime because his negligence causes an injury and that other causes may have contributed to the injury.

13. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE OF CHILD — QUESTION OF FACT.—Whether a child over seven years old has sufficient intelligence to observe due care is a question for the jury, and no presumption arises one way or the other.

14. CRIMINAL LAW—EVIDENCE—PRESUMPTIONS.—In criminal cases based on negligence, it will be presumed that a child between seven and fourteen is incapable of being guilty of negligence, and when under seven absolutely incapable thereof.

15. CRIMINAL LAW — DEFENSES — CONTRIBUTORY NEGLIGENCE.—Contributory negligence cannot constitute a defense to an indictment for any criminal offense.

16. HOMICIDE—DEFENSES—CONTRIBUTORY NEGLIGENCE.—Contributory negligence cannot constitute a defense to an indictment for murder or manslaughter.

Before MEMMINGER, J., Richland, Spring term, 1918. Affirmed.

J. L. Hanahan and K. C. Hardin were convicted of manslaughter and they appeal.

The two defendants were indicted for manslaughter in the same indictment, but for separate offenses, under the following circumstances: While deceased, a 12-year-old boy, was climbing out of a grocery wagon standing near a curb, the wagon was struck by an automobile driven by defendant, Hanahan, and overturned. Immediately after,

but almost at the instant of, the accident, Hanahan's automobile was in turn struck by a heavier automobile driven by defendant, Hardin, and deceased, thrown from the wagon to the ground by the first automobile, was struck or run over by both automobiles and severely injured, dying soon after.

The charge of the Court and the exceptions thereto, referred to in the opinion, are as follows:

"Judge's Charge: The Court: Now, Mr. Foreman and gentlemen of the jury, these two defendants stand indicted before you on the charge of manslaughter. Now, manslaughter in the Code is defined to be the unlawful killing of a human being, and done without malice, either express or implied.

"As I stated to you a few days ago, an indisposition of the Court has very much weakened it and hampered it in laying down these principles of law by which you are to be governed in the trial of this case. But we are here engaged in an important inquiry in which the principles of law are somewhat unusual. Therefore the Court feels the importance of laying them fairly and squarely before you, so that you can hear them distinctly and understand exactly what is meant.

"Now, this defendant, as I said to you—these defendants —are charged with manslaughter, which is defined in our Criminal Code in the most general form—that is, to include every possible form of manslaughter; and that definition is the unlawful killing of a human being and done without malice, express or implied. Now, ordinarily we link the idea of manslaughter with killings in sudden heat and passion, where the killing is done in sudden heat and passion and upon sufficient legal provocation; that is, where the party doing the killing intends to kill, but does it upon provocation, such provocation as the law recognizes and extenuates the killing; although he intended to kill, it gives him the benefit of extenuating circumstances, such as where he is struck a blow, where one man strikes another a blow, and,

acting under the influence of provocation engendered by that blow, the other strikes back or shoots back or cuts back and kills. There, although he intended to kill, had the deliberate intention of killing and did kill, yet still the law des not call that murder, but only manslaughter, giving him the benefit of the provocation which has been engendered by the blow.

"Now, in this case we haven't that idea to consider at all. We have this further form of manslaughter equally included in the definition, the general definition; that is, what is commonly known as involuntary manslaughter, where the party or parties who did the killing did not intend to kill, had no malice in their hearts, did not deliberately intend to kill anybody, but, nevertheless, were engaged in some unlawful act, as the result of which death resulted; and the law says there that although the party did not intend to kill, yet still he was doing some unlawful act from which death resulted as a proximate cause, and that, therefore, that comes under the head of an unlawful killing, because it was done—it came about as the proximate result of an unlawful act.

"Now, we strike those cases, gentlemen, most frequently in the cases of handling deadly weapons, and we find a number of them in the books along that line, where a man is handling a deadly weapon in a careless manner, not intending to kill anybody at all, harboring no malice or grudge against any one, but in the careless handling of that weapon the weapon goes off and death results. Now, those are typical cases of what we call involuntary manslaughter— that is, the commission of an unlawful act from which death results as a proximate result. Now, in our law books we have had a number of those cases, and there is a statute in our statute books which says that to point a weapon at another person, loaded or unloaded, is an unlawful act and made punishable under the law, because so many killings resulted, as we all know, from the pointing of weapons at other people not supposed to be loaded, and they went off and killed somebody; so if anybody, under the law as it is

now, points a weapon at another person, not believing it to
be loaded, in a careless manner, and death resulted from that,
he would be guilty of involuntary manslaughter, the unlaw-
ful act being the pointing of the weapon at the person, and
the result consisting of that unlawful act followed by killing
as a proximate result thereof.

"Now, the Courts have held—at first the idea was that
unless there was gross carelessness in the handling of the
deadly weapon or in the use of some instrumentality which
would bring about death and which was calculated, if neg-
ligently operated, to bring about death, originally the idea
was that it had to be gross carelessness before you would
attach a penalty of manslaughter to death resulting as a
proximate cause; but our Supreme Court in recent cases has
most distinctly held that it does not have to be gross care-
lessness, that mere negligence is enough; that if a man is
guilty of negligence in the handling of a dangerous instru-
mentality, and death results from that negligence as a proxi-
mate result thereof, he is held guilty of manslaughter.
Now, I have a case right here, gentlemen. I want this idea
to be clearly understood by you. There are only a few
words to be read from the book. These are the few words,
gentlemen, from the case I want you to understand, that
'One guilty only of ordinary negligence in handling a pistol,
which results in the death of a bystander, may be convicted
of involuntary manslaughter.' This is what the Court says:
'This is an appeal from the sentence imposed upon the
defendant, who was convicted of manslaughter. The ques-
tion is whether a person was subject to conviction for invol-
untary manslaughter, when he is only guilty of ordinary
negligence in handling a pistol which results in the killing
a bystander. The following cases show that the exceptions
raising this question cannot be sustained.' So that that
principle, we can say, is formally and absolutely established
in our Courts.

"Now, the idea that the jury will have to get impressed on them is this, to understand what negligence is. It is the failure to exercise due care under all of the facts and circumstances of the situation; it is doing something which a person of—a reasonably prudent person would not have done, or failing to do something which a reasonably prudent person would have done under the circumstances. That is what negligence is.

"Now, gentlemen, just negligence itself, it is not enough to cause any punishment or any injury to be recovered for based upon it, but the negligence, in order to be held the cause of anything—such as in this case it is claimed that it was the cause of the death of this boy—the death must have been the proximate result of that negligence. So you will want to understand what that means. Now, in our statutes, and in the ordinances of the city of Columbia, as you have heard stated by the lawyers, the speed limit for automobiles is fifteen miles an hour, and the law says that if a person runs beyond that speed he runs negligently—a case of negligence of itself is made out if he runs beyond that speed. Now, of course, if he only did that, that would be a violation of the city ordinance; but if as a result or proximate cause of running beyond that rate of speed he kills somebody, why there, then, you would have a case, gentlemen, of what we call involuntary manslaughter as resulting from negligence, the law fixing negligence upon a person who goes beyond the rate of speed allowed by the ordinance or the State statute, provided that negligence was the proximate cause of it.

"Now, the presumption of the thing is along this idea; for instance, in one of the cases in our books, one in which the law requires a locomotive to carry a headlight, and the failure to carry a headlight is negligence on the part of the locomotive engineer, and a man in one of the cases was going down a railroad track at night and he looked and saw the railroad train coming, it was a bright moonlight night,

and he looked and saw it, and he took the chances of getting across the track before the train could hit him; it turned out in the case that the railroad train did not have any light, which, of course, was negligence; but it was held, gentlemen, in that case, and it is undoubtedly plain for any one, that it could not be said that the failure to have the light could be the proximate cause of the man's injury, because the object of the light was to give notice of the approach of the train, and that object had been accomplished, as the man had seen it approaching; therefore, it could not be said that the failure to have the light was the proximate cause of the injury. So you see there may be negligence, a party may be guilty of a negligent act, but, unless it is the proximate cause of bringing about the injury under investigation, that negligence does not obtain, nor is it to be considered in any way, shape or form.

"Now, it is claimed under this indictment that the death of this boy was brought about by both of these men being guilty of negligence, and the negligence of each contributing to bring about the boy's death as a proximate cause of it.

"Now, the law is this, gentlemen, if one person inflicts upon another such injury as death will surely result, even in a few minutes of time after the injury is inflicted, and another person comes along and inflicts another injury on that person, on the injured person, which even by a moment or instant of time hastens the death caused by the previous injury, he becomes a participant in bringing about the death, and is as guilty as the man who inflicted the first injury from which death would have resulted.

"Now, upon the State throughout this whole inquiry, bear in mind, the burden is of proving beyond a reasonable doubt that death was caused by either of these men before either is guilty of manslaughter, as charged in this indictment, and to show that the injury was not brought about by pure accident. If it was a pure accident, why then, of course, conviction cannot follow; and the State must satisfy you beyond

a reasonable doubt that it was not an accident. It has got to satisfy you beyond a reasonable doubt that it was brought about by negligence, and that negligence was the proximate cause of bringing it about. If it shows that as to one man, he is guilty; if it shows that as to both men, then both are guilty.

"Now, there is no charge here of any combination between these men whatever to commit this act or an agreement to participate in the bringing about of the death of the boy. But the charge is that they both contributed then and there and brought about the death of this boy, the one by inflicting first an injury upon him from which he would immediately or soon die, the other hastening of that end by producing another injury upon him.

"And now, gentlemen, those are the principal points really involved in this case. There are one or two others that the counsel have drawn—have asked me to call to your attention.

. . "On behalf of the State—Mr. Solicitor Cobb: Your Honor, you have already covered my requests. The Court: Now, on behalf of the defendants there are two propositions that need some explanation, gentlemen. The first one is:

" 'Death following a wound from which death might ensue, inflicted with murderous intent'—of course, we have nothing like that here; there is no murderous intent and those words should be modified into manslaughter—'is presumed to have been caused by such wound, and the burden rests upon the party inflicting it to show to the satisfaction of the jury that death did not result therefrom, but from some other cause. But where several injuries are inflicted by different persons, and it is uncertain which was the mortal wound, or whether all were mortal, a person who inflicted one of them should not be convicted of murder (here the Court has changed the word "murder" to "manslaughter")

therefor; and where the jury have a reasonable doubt as to which inflicted the injury causing death, all should be acquitted.'

"Of course, taking that in connection, gentlemen, with what I have already explained.

"The next point is:

" 'When death is directly imputable to the negligence or imprudence of the deceased, another, though guilty of gross negligence, cannot be held criminally liable therefor unless the imprudence of the deceased was the natural result of his negligence.'

"Now, I take it, gentlemen, that the idea that counsel want to be conveyed to you there is, although that is very obscure, is that if the boy was guilty of negligence in being in an unfit place or where he placed himself, that you could not convict either of these men for killing him, because that would be the claim of what we ordinarily call contributory negligence, which in civil cases would defeat recovery. That is the idea sought to be conveyed there. It may be so, and I am willing to charge you that it is the law, that if it was mere negligence on the part of these men, and the boy also was guilty of negligence, the boy who was killed was guilty of negligence, if that was so, then you could not convict him if he had not killed him; but you must bear in mind this, even if the boy was guilty, that would be no defense against gross negligence; a higher degree of negligence would be sufficient upon which to base a verdict of manslaughter; if it was gross negligence, why that would not let them out any. And, furthermore, bear in mind this proposition, that a child between seven years and fourteen is presumed to be incapable of being guilty of negligence; under seven absolutely incapable; you don't hold a child under seven years of age—you don't hold them responsible for their acts at all in the way of saying that they can be careless; you don't count them; after they get above seven and between that and fourteen, the presumption is that they

are not—that you cannot hold them responsible for any care-lessness.   That presumption has to be overcome.   Other-wise, you take that to be the case, unless you have evidence to overcome it and show that the boy was of such a nature and intelligence and so on as to be held capable of careless-ness and so on.

"With those ideas in view, gentlemen, on the back of this indictment you will write either guilty of manslaughter as to both of the defendants, which will mean a punishment rang-ing from two to thirty years, in the discretion of the Judge, or guilty of manslaughter as to one or the other, or not guilty as to one or both.   So, then, your verdict will either be not guilty, guilty of manslaughter as to both, guilty of man-slaughter as to one, naming the one you find guilty, if you find one guilty.

"If there are any points now, gentlemen, during your deliberations, that you fail to understand in the case, don't hesitate to come back here and get the foreman to direct the attention of the Judge to it, and ask the Court for explana-tion upon any point in the case you don't understand upon the law.   And upon the facts, if you wish your memory refreshed, come back here and the stenographer will take pleasure in going over them with you.   You have great responsibility, and I am sure you want to discharge your duty with fairness to both the State and the defense.

"Mr. Spigner: Your Honor, you covered the case very thoroughly, but I think you omitted one proposition.   It is an admitted fact that there is an ordinance to this effect, that all vehicles must carry lights.   And if you find—if the jury should find—that this vehicle had no light, then the drivers or those in charge of this vehicle were guilty of negligence *per se.*

"I thought that you gentlemen would understand that that would be so—would be guilty of negligence in not having a light; but if that was not the proximate cause that con-tributed to bringing about this killing, it would not have any-

thing to do with it—that is, if the parties saw the wagon just as well without the light, how could it be said that the failure to have the light on it was a proximate cause in bringing about the killing? That is along the line I charged you about the engine. The failure to comply with the ordinance in failing to have the light or going over the speed limit is negligence, but unless it contributes to bringing about the cause of the injury it vanishes out of the case.

"Mr. Spigner: Your Honor, you understand that was an ordinance, and we agreed to that. The Court: Oh, yes.

"(The jury retired and returned with a verdict of guilty as to both defendants.)

Exceptions. Defendants except to the rulings and instructions of the Court upon the following grounds, to wit:

"(1) To the ruling of the Judge on the motion for severance and separate trial, upon the ground that his Honor erred in refusing said motion, because: (a) It appeared on the face of the indictment that the defendants were charged with several and separate, and not with a joint, offense; (b) the evidence which would be competent against one was incompetent against the other defendant, and it was error to require the two to be tried together, and the said ruling was an abuse of discretion by the Court.

"(2) That his Honor erred in charging the jury as follows: 'Now, in this case, we haven't that idea to consider at all. We have this further form of manslaughter equally included in the definition, the general definition; that is, what is commonly known as involuntary manslaughter, where the party or parties who did the killing did not intend to kill anybody, but, nevertheless, were engaged in some unlawful act, as the result of which death resulted; and the law says there that although the party did not intend to kill, yet still he was doing some unlawful act from which death resulted as a proximate cause, and that, therefore, that comes under the head of an unlawful killing because it was done— it came about as the proximate result of an unlawful act.'

"In so charging his Honor committed the following errors:

"(a) In submitting to the jury and allowing it to consider and determine whether the accused were engaged in an unlawful act when the deceased was killed, when the indictment did not charge the accused with killing the deceased while they were engaged in doing an unlawful act, but charged them with the killing of deceased through carelessness in the operation of automobiles, manslaughter through negligence; and in so charging the jury, his Honor erred in instructing them that the principles of law applicable to the trial of the two kinds of involuntary manslaughter are the same—that is, that the same principles of law are applicable when the accused is charged with manslaughter growing out of the commission of an unlawful act, and when the accused is charged with manslaughter growing out of his negligence; whereas, to establish the two kinds of manslaughter, different burdens rest upon the State, and the accused is entitled to interpose different defenses.

"(b) In charging the jury that where one who is engaged in the commission of an unlawful act, kills another, while doing such unlawful act, he is guilty of manslaughter; whereas, under the law, such a one as so kills another would be guilty of manslaughter only when the unlawful act is an unlawful act in itself, *malum in se,* and not when the act is unlawful merely because it is prohibited, *malum prohibitum.* And in this connection his Honor erred in not allowing the jury to pass upon the nature of the unlawful act, and to say whether or not it was unlawful in itself.

"(c) And in charging the jury that whoever, while engaged in an unlawful act, kills another, is guilty of manslaughter, his Honor charged the jury on the facts of the case, in violation of the Constitution, by taking from the jury their right to pass upon the nature of the unlawful act.

"(3) Because his Honor erred in charging the jury as follows: 'Now, we strike those cases, gentlemen, most fre-

quently in the cases of handling deadly weapons, and we find a number of them in books along that line, where a man is handling a deadly weapon in a careless manner, not intending to kill anybody at all, harboring no malice or grudge against any one, but in the careless handling of that weapon the weapon goes off and death results. Now, those are typical cases of what we call involuntary manslaughter— that is, the commission of an unlawful act from which death results as a proximate result. Now, in our law books, we have had a number of those cases, and there is a statute in our statute books which says that to point a weapon, loaded or unloaded, is an unlawful act and made punishable under the law, because so many killings resulted, as we all know, from the pointing of weapons at other people, not supposed to be loaded, and they went off and killed somebody; so if anybody, under the law as it is now, points a weapon at another person, not believing it to be loaded, in a careless manner, and death resulted from that, he would be guilty of involuntary manslaughter, the unlawful act being the pointing of the weapon at the person, and the result consisting of that unlawful act followed by killing as a proximate result thereof.'

"In so charging his Honor erred:

"(a) In that he charged the jury on the facts of the case, in violation of the Constitution, by intimating to the jury that in his opinion one who negligently uses an automobile, and thereby causes a homicide, is as guilty of manslaughter as one who causes death through the careless use of firearms; whereas, he should have allowed the jury to say, unassisted by any opinion of his, whether the careless operation of an automobile should be considered as in the same class of offenses as the careless use of deadly weapons.

"(b) In that by so charging he instructed the jury as a matter of law that an automobile is a deadly weapon, or dangerous instrumentality, the careless use of which would subject the user thereof to the same liability as the careless

use of firearms; whereas, he should have allowed the jury to say whether an automobile is such a dangerous instrumentality that it should be placed in the class of deadly weapons.

"(c) In that by so charging he instructed the jury that the careless use of an automobile is an unlawful act, the doing of which would render the perpetrator of the act guilty of manslaughter; whereas, he should have allowed the jury to say whether the careless use of an automobile is unlawful in itself, or merely unlawful because prohibited, and, therefore, such an unlawful act as would not render the doer thereof guilty of manslaughter where death results from the doing of the act.

"(4) That his Honor erred in charging the jury: 'But our Supreme Court in recent cases has most distinctly held that it does not have to be gross carelessness, that mere negligence is enough, that if a man is guilty of negligence in the handling of a dangerous instrumentality and death results from that negligence as a proximate result thereof, he is held guilty of manslaughter. Now, I have a case right here, gentlemen. I want this idea to be clearly understood by you. There are only a few words to be read from the book. These are the few words, gentlemen, from the case I want you to understand, that "One guilty only of ordinary negligence in handling a pistol, which results in the death of a bystander, may be convicted of involuntary manslaughter," ' because (a) the same was a charge on the facts; (b) contained an intimation that the case at bar was just like the case from which the Court read, and that defendants were guilty of manslaughter; (c) did not take into consideration the fact that, although defendants might be guilty of ordinary negligence, yet, if an unforeseen act of the person killed, or of the horse and wagon, contributed to or caused the injury, defendant could not be guilty.

"(5) That his Honor erred in charging the jury: 'Now, of course, if he only did that, that would be a violation of

the city ordinance; but if as a result or proximate cause of
running beyond that rate of speed kills somebody, why there,
then, you would have a case, gentlemen, of what we call
involuntary manslaughter as resulting from negligence, the
law fixing negligence upon a person who goes beyond the
rate of speed allowed by the ordinance or the State statute,
provided that negligence was the proximate cause of it,'.
because (a) the same contains an erroneous proposition of
law; (b) it excludes from the consideration of the jury con-
sideration of the acts of the party killed, and of the acts and
conduct of the horse and vehicle which the boy who was
killed was in; (c) the statement of the law in this quotation
is self-contradictory and confusing, and calculated to mis-
lead the jury.

"(6) That his Honor erred in charging the jury: 'Now,
the law is this, gentlemen, if one person inflicts upon another
such injury as death will surely result, even in a few minutes
of time after the injury is inflicted, and another person comes
along and inflicts another injury on that person—on the
injured person—which even by a moment or instant of time
hastens the death caused by the previous injury, he becomes
a participant in bringing about the death, and is as guilty as
the man who inflicted the first injury from which death
would have resulted,' because (a) it is a charge on the facts
and a clear intimation of the opinion of the Court as to the
liability of the defendants, especially of the defendant, Har-
din; and (b) it is erroneous because the fact that a person
inflicts an injury on another does not make him guilty unless
the injury was inflicted unlawfully, and this element is
entirely left out of this statement of the law.

"(7) That his Honor erred in charging the jury: 'It has
got to satisfy you beyond a reasonable doubt that it was
brought about by negligence, and that that negligence was
the proximate cause of bringing it about.   If it shows that
as to one man, he is guilty; if it shows that as to both men,
then both are guilty,' because (a) a person is not necessarily

guilty of a crime, even where his negligence brings about an injury. Other causes and circumstances and the acts of the person injured, or of independent causes, may have contributed to the injury.

"(8) That his Honor erred in charging the jury: 'But the charge is that they both contributed then and there and brought about the death of this boy, the one by inflicting first an injury upon him from which he would immediately or soon died, the other hastening of that end by producing another injury upon him,' because (a) it is a charge on the facts and an intimation that the defendants were guilty; (b) it is a statement that the inflicting of an injury causing death would make one liable, without regard as to how it was inflicted.

"(9) That his Honor erred in charging the jury: 'It may be so, and I am willing to charge you that it is the law that if it were mere negligence on the part of these men and the boy also was guilty of negligence, the boy who was killed was guilty of negligence, if that was so then you could not convict him if he had not killed him; but you must bear in mind this, even if the boy was guilty, that would be no defense against gross negligence; a higher degree of negligence would be sufficient upon which to base a verdict of manslaughter; if it was gross negligence, why that would not let them out any. And furthermore, bear in mind this proposition, that a child between seven years and fourteen is presumed to be incapable of being guilty of negligence, under seven absolutely incapable. You don't hold a child under seven years of age—you don't hold them responsible for their acts at all in the way of saying that they can be careless; you don't count them. After they get above seven and between that and fourteen the presumption is that they are not—that you cannot hold them responsible for any carelessness. That presumption has to be overcome. Otherwise you take that to be the case, unless you have evidence to overcome it and show that the boy was of such a nature

and intelligence and so on as to be held capable of carelessness and so on,' because (a) the said charge is confusing and misleading; (b) it is a charge on the facts, and an intimation of the opinion of the Court against the defendants; (c) the fact that a child between seven and fourteen is presumed not to be guilty of contributory negligence will not make the act of another criminal, which otherwise would not be criminal, certainly unless there was evidence of knowledge of the age of the child; (d) if the child or children were placed in charge of a horse or vehicle at a dangerous time and place, any one using the highway, and having a right to use it, would have a right to presume that such child or children were capable of exercising care, and consequently of exercising want of care.

"(10) That his Honor erred in charging the jury: 'I thought that you gentlemen would understand that that would be so—would be guilty of negligence in not having a light; but if that was not the proximate cause that contributed to bringing about this killing, it would not have anything to do with it—that is, if the parties saw the wagon just as well without the light, how could it be said that the failure to have a light on it was a proximate cause in bringing about this killing? That is along the line I charged you about the engine. The failure to comply with the ordinance in failing to have the light or going over the speed limit is negligence, but unless it contributed to bringing about the cause of the injury vanished out of the case,' because (a) it contains a charge on the facts; (b) it arrays the facts against the defendants "

*Messrs. A. F. Spigner* and *D. W. Robinson,* for J. L. Hanahan, appellant, cite: *As to severance:* 108 S. C. 490; 95 S. E. 61; 95 S. C. 389; 30 S. C. 90. *As to charge on facts:* 85 S. C. 269-71; 31 S. C. 235-6; 28 S. C. 13; 108 S. C. 201; 108 S. C. 177; 95 S. E. 333-4. *As to Court using illustrations from cases in which the facts were closely akin to the one being tried:* 105 S. C. 59; 103 S. C. 277; 88 S. E. 295.

*Degree of care was a question for the jury:* 102 S. C. 171. *Charge confusing and misleading:* 102 S. C. 417. *As to violation of statutory duty:* Criminal Code, sec. 601; Acts of Legislature 1918, p —; 92 S. C. 80; 90 S. C. 277; 91 S. C. 42.

*Mr. R. E. Carwile,* for K. C. Hardin, appellant, cites: *As to severance:* Vol X, A. & E. Enc. of Pl. and Pr. 534; 32 Tex. Crim. Reports 358; 48 L. R. A. 169; 92 N. C. 788; 97 N. C. 474. *As to the failure of the presiding Judge to observe, in his charge to the jury, the distinction between the two classes of involuntary manslaughter:* Wharton on Homicide, p. 335, par. 212; Clark on Criminal Law —; 66 S. C. 419; Wharton on Homicide, chapter X, sections 215, 216, 217 and 218; chapter XX, sections 466, 467, 470 and 473; Wharton on Homicide, section 213; 8 Ohio State 138; 34 S. C. 120; 1 Russell on Crimes 424 (3d Am. Ed.); 64 S. C. 566; 2 Strob. 77; 66 S. C. 423; 86 S. C. 211; 86 S. C. 213; 73 S. C. 340; 30 S. C. 74; Wharton on Homicide, sec. 446; 61 L. R. A., p. 277, and note 279; 1 McMul. 47; 31 S. C. 156; 34 S. C. 120.

*Mr. Mendel L. Smith,* also for K. C. Hardin, appellant (oral argument).

*Solicitor W. Hampton Cobb,* for State-respondent, cites: *As to severance:* 10 Ency. Pl. and Pr. 547; 28 S. C. 573; 14 Rich. 172; 15 S. C. 436; Arch. Crim. Pr. & Pl. 95; 75 S. C. 477; 38 S. C. 353; 55 S. C. 353. *As to the charge upon manslaughter:* 101 S. C. 303; 66 S. C. 419; 83 S. C. 354; 21 Cyc. 765; 1 Bishop's New Criminal Law, 8th Ed., p. 332; Greenleaf on Evidence, 16th Ed. 134-135. *As to charge upon facts:* 86 S. C. 49; 101 S. C. 542; 74 S. C. 102; 54 S. E. 255; 80 S. C. 410; 61 S. E. 893; 93 S. C. 372. *As to contributory negligence upon part of the deceased:* Clark's Crim. Law 211; 21 Cyc. 766.

August 2, 1918.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

The appellants were indicted, tried and convicted of manslaughter at the January term of Court, 1918, for Richland county, before his Honor, Judge Memminger, and a jury. After the appellants were duly sentenced they appeal, and by 10 exceptions allege error and seek reversal.

The first exception imputes error that the motion for a separate trial of the appellants was refused on the ground that they were not jointly charged, and that the evidence which might be competent against one might be incompetent against the other. This exception is overruled. The motion was purely within the discretion of the trial Judge, and, under the situation as developed when the motion was made, we see no abuse of discretion on the part of his Honor or that he committed any error in overruling the motion.

Exceptions 2 and 4 complain of error on the part of his Honor in his charge to the jury. Taking the Judge's charge as a whole, we see no reversible error as complained of in these exceptions. His Honor charged the law as made by the case of *State v. McCalla,* 101 S. C. 303, 85 S. E. 720. Chief Justice Gary says in this case: "The appellant's attorneys were granted permission to review said cases (*State v. Gilliam,* 66 S. C. 419 (45 S. E. 6); *State v. Tucker,* 86 S. C. 211 (68 S. E. 523); *State v. Revels,* 86 S. C. 213 [68 S. E. 523]); but this Court is satisfied that they embody sound propositions of law, and see no reason for overruling the principles upon which they were decided."

These exceptions are overruled.

Exceptions 3, 5, 6, 8 and 10 allege error and impute to his Honor that he charged upon the facts in violation of law.

The Judge's charge, considered in its entirety, is free from error in the particulars set out in these exceptions, and these exceptions are overruled

Exception 7 is overruled as being without merit.

Exception 9 is overruled.   His Honor charged the jury that a child between seven and fourteen is presumed to be incapable of being guilty of negligence, under seven absolutely incapable.

It is a question for the jury to determine whether a child over seven years old has sufficient intelligence to observe due care, and no presumption arises one way or the other.

In crime there is that presumption as laid down by his Honor, but this could not have been prejudicial to the defendants, for his charge, construed as a whole, was as favorable to the defendants as they had the right to expect.

In no event is contributory negligence a defense to an indictment for murder or manslaughter or any criminal offense.

Exception 10 is overruled as being without merit.

His Honor's charge was fair and impartial, and he fully explained the case to the jury, and submitted to them the guilt or innocence of the accused.

The jury had ample evidence to sustain their verdict that the defendants killed the deceased, and were guilty of operating their automobile without due care and precaution, but in violation of the statute law of the State and the ordinances of the city of Columbia, and that was the proximate cause of deceased's death, and the defendants' action was a conscious disregard of other people's rights on the highways.

Judgment affirmed.