16454

STATE v. BARNETT

(63 S. E. (2d) 57)

*Messrs. Williams & Parler,* of Lancaster, and *Hemphill & Hemphill,* of Chester, *for Appellant,*

*Messrs. Hemphill & Hemphill,* of Chester, *by Supplemental Brief, for Appellant,*

418

*Messrs. John M. Daniel, Attorney General,* and *T. C. Callison* and *Daniel R. McLeod, Assistant Attorneys General,* all of Columbia, *for Respondent,*

*Mr. W. Gist Finley, Solicitor,* of York, *by Supplemental Brief, for Respondent,*

*Messrs. Hemphill & Hemphill,* of Chester, *for Appellant, in Reply,*

January 10, 1951.

OXNER, Justice.

Appellant was convicted of involuntary manslaughter. It was alleged in the indictment that the homicide resulted from criminal negligence in the operation of an automobile. The exceptions on this appeal relate solely to the charge.

It is contended that the Court failed to charge that any doubt as to the guilt or innocence of the accused must be resolved in his favor. The jury was fully instructed that the burden was upon the State to prove the guilt of the accused beyond a reasonable doubt and after carefully explaining the meaning of this term, the Court said: "Now, do you have any such doubt as that in this case? If so, it would be your duty to resolve the doubt in favor of the accused and write a verdict of not guilty." There is no merit in this exception.

Another assignment of error relates to an oversight on the part of the Court in failing to charge on the presumption of innocence. The jury was fully instructed as to reasonable doubt. At the conclusion of the charge, the Court inquired if any further instructions were desired but appellant's counsel did not call the Court's attention to the omission now complained of. This exception is overruled under the authority of *State v. Johnson,* S. C., 156 S. E. 351, 352, and *State v. Biggs,* 192 S. C. 49, 5 S. E. (2d) 563. In the *Johnson case,* the Court said: "It would have been the proper thing in this case for the trial judge to have given such instruction; but, in view of the fact that he instructed the jury fully as to reasonable doubt, and that there was no request for a specific charge as to presumption of innocence, we do not think, under the authorities cited, that his failure to charge as to such presumption was reversible error." Also, see *State v. McGee,* 185 S. C. 184, 193 S. E. 303; *State v. Lyles,* 210 S. C. 87, 41 S. E. (2d) 625.

Error is assigned in the instructions relating to the degree of negligence necessary to sustain a conviction of involuntary manslaughter. It is said that the Court erred in charging that ordinary negligence is sufficient and that the jury should have been instructed that it was incumbent upon the State to show gross negligence or recklessness.

After defining involuntary manslaughter and distinguishing that offense from voluntary manslaughter, the Court

stated that involuntary manslaughter may consist in the "killing of another without malice and unintentionally, but while one is engaged in the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm", or in "the killing of another without malice and unintentionally but while one is negligently engaged in doing a lawful act." The jury was given the usual definition of negligence but was not instructed as to gross negligence, recklessness or wantonness. The testimony is not incorporated in the record but we assume from the charge that the State relied on the violation of certain statutes in this State regulating the operation of automobiles, and the jury was instructed that a violation of a statute of this kind constitutes negligence *per se*.

The charge of the trial Judge is in accord with the rule laid down by this Court in *State v. Hanahan,* 111 S. C. 58, 96 S. E. 667; *State v. Dixon,* 181 S. C. 1, 186 S. E. 531; *State v. Staggs,* 186 S. C. 151, 195 S. E. 130; *State v. Brown,* 205 S. C. 514, 32 S. E. (2d) 825. It was held in these cases that simple negligence in the operation of an automobile is sufficient to support a conviction of involuntary manslaughter.

We ordered a reargument of this case on the question of whether we should adhere to the rule established by the foregoing decisions and have been furnished excellent briefs by counsel for both appellant and respondent, as well as an able and comprehensive brief by the Attorney General, all of which have been of much aid in our re-examination of the question.

The degree of negligence necessary to establish criminal liability has perplexed the courts of England and America for centuries. The subject has at times been the source of much confusion. In the early development of the criminal law in England it was held that ordinary negligence, that is, the failure to exercise due care, was sufficient. Later it was found that this rule was too harsh. A noted English author-

ity observed that an accident brought about by an act of ordinary negligence "may be the lot of even the wisest and best of mankind." The English courts finally concluded that more carelessness was required to create criminal liability than civil but they found it difficult to determine "how much more". They use such words as "gross", "reckless" and "culpable", and hold that it is for the jury to decide, in view of all the circumstances, whether the act was of such character as to be worthy of punishment. An excellent review of the English decisions will be found in *People v. Angelo,* 246 N. Y. 451, 159 N. E. 394. Professor Moreland made a valuable contribution to the subject in an article entitled "A Rationale of Criminal Negligence", reported in Volume 32 of. the Kentucky Law Journal. It seems to be the rule in Canada that there is no criminal liability unless there is gross negligence or wanton misconduct and that "to constitute crime, there must be a certain moral quality carried into the act before it becomes culpable." *Rex v. Griesman,* 4 D. L. R. 738, 49 Can. C. C. 172. There was a tendency in the early American decisions to follow the rule first adopted in England to the effect that ordinary negligence was sufficient. That standard was soon repudiated, however, by the great majority of the courts in this country and it is now generally held that the negligence of the accused must be "culpable", "gross", or "reckless", that is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as to be incompatible with a proper regard for human life, or conduct amounting to an indifference to consequences. 26 Am. Jur., Homicide, Section 210, page 299; 40 C. J. S., Homicide, § 62. Of course, under all the authorities the conduct of the accused must be judged in the light of the potential danger involved in the lawful act being performed. In perhaps a majority of the states, the offense of involuntary manslaughter is now defined by statute. Although variously worded, these statutes, with a few excep-

tions, have been construed as requiring gross negligence or recklessness. Annotation 161 A. L. R. 10.

Adverting now to homicides resulting from the operation of automobiles, in almost all jurisdictions, either by statute or by application of the rule governing involuntary manslaughter at common law, the rule is that the negligence necessary to convict a motorist of involuntary manslaughter must be of a higher degree than is required to establish negligent default on a mere civil issue and that the proof must show recklessness or such carelessness as is incompatible with proper regard for human life. 5 Am. Jur., Automobiles, Section 790, page 927; 61 C. J. S., Motor Vehicles, § 659 (b); Annotation 99 A. L. R., page 829; Blashfield Cyclopedia of Automobile Law and Practice, Permanent Edition, Volume 8, Section 5388. Most courts have refused to consider an automobile as an inherently dangerous instrumentality so as to warrant the application of the "deadly weapon" rule. *State v. Clark,* 196 Iowa 1134, 196 N. W. 82.

In the light of the foregoing general background, we shall now consider and review the decisions of this Court relating to involuntary manslaughter resulting from negligence. The legislature of this State has never undertaken to define involuntary manslaughter. The general statutory definition, Section 1107 of the 1942 Code, that manslaughter is "the unlawful killing of another without malice, express or implied", includes both voluntary and involuntary manslaughter. For a long number of years the punishment for both offenses was the same, namely, imprisonment for not less than two years nor more than thirty years. In 1931 the statute was amended so as to provide a maximum term of three years for involuntary manslaughter. 37 St. at L. 332. In 1934 the statute was further amended, so that now the punishment for this form of homicide is imprisonment for a period of not less than three months nor more than three years in the discretion of the trial Judge. 38 St. at L. 1463; Section 1107 of the 1942 Code.

There being no statutory definition of involuntary manslaughter, the courts of this State necessarily followed the common law definition. In doing so, as might have been expected from the experience of other courts, there has been some difficulty, and at times confusion, in determining the degree of negligence necessary to establish the offense.

We shall first review the cases in this State involving the use of firearms. Passing over the earlier decisions, it was held in *State v. Gilliam*, 66 S. C. 419, 45 S. E. 6, that one who causes the death of another by the negligent use of a pistol or gun is guilty of involuntary manslaughter, unless the negligence is so wanton as to make the killing murder. In *State v. Clardy*, 73 S. C. 340, 53 S. E. 493, 500, the Court indicated that gross carelessness in the handling of a deadly weapon was necessary to support a verdict of involuntary manslaughter, and quoted with approval the following: "And undoubtedly the common-law rule is that criminality may be affirmed of a lawful act carelessly or negligently done. The negligence, however, must be aggravated, culpable, gross. That is, it must be such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as evidences a disregard of human life or indifference to consequences." In the following subsequent cases, the Court, without referring to *State v. Clardy, supra*, held that simple negligence in the handling of a pistol or gun was sufficient to support a conviction of involuntary manslaughter. *State v. Revels*, 86 S. C. 213, 68 S. E. 523; *State v. Tucker*, 86 S. C. 211, 68 S. E. 523; *State v. Causer*, 87 S. C. 516, 70 S. E. 161; *State v. Badgett*, 87 S. C. 543, 70 S. E. 301. In *State v. McCalla*, 101 S. C. 303, 85 S. E. 720, the Court was asked to review the simple negligence rule laid down in *State v. Gilliam* and concluded that it was sound and should stand. Mr. Justice Watts dissented upon the ground that the State should be required to show gross negligence. The rule announced in *State v. Gilliam* has been consistently followed and may now be regarded as well settled in this jurisdiction. *State v. Quick*,

168 S. C. 76, 167 S. E. 19; *State v. McLaughlin*, 208 S. C. 462, 38 S. E. (2d) 492.

The question of the degree of negligence necessary to convict the driver of a motor vehicle of involuntary manslaughter came before this Court for the first time in 1918. *State v. Hanahan, supra,* 111 S. C. 58, 96 S. E. 667. On the analogy of the cases involving the use of a deadly weapon, it was held that simple negligence was sufficient. The rule there laid down was distinctly recognized, although not discussed, in *State v. Martin*, 122 S. C. 286, 115 S. E. 252, and *State v. Portee*, 122 S. C. 298, 115 S. E. 238. *In State v. Sussewell*, 149 S. C. 128, 146 S. E. 697, 698, the defendant was convicted of assault and battery of a high and aggravated nature growing out of the operation of an automobile. The trial Judge charged the jury that the State was required to prove "gross carelessness or recklessness on the part of the defendant." Of course, there was no complaint by the defendant as to this phase of the charge and the question under consideration was not discussed in the majority opinion of the Court. In *State v. Dickerson*, 179 S. C. 239, 184 S. E. 585, 592, a case of involuntary manslaughter growing out of the operation of a truck, the trial Judge charged the jury that the burden was upon the State to prove that the death of the deceased "was caused not from mere carelessness, but through criminal carelessness, which includes recklessness." There was no comment in the leading opinion on the correctness of this instruction. In a concurring opinion, however, Mr. Chief Justice Stabler referred to the case of *State v. Hanahan, supra,* and stated that the foregoing instruction was "more favorable to the defendant than he was entitled to."

The question now under consideration was squarely presented to the Court in *State v. Dixon, supra,* 181 S. C. 1, 186 S. E. 531. In that case the trial Judge refused a request by defendant to the effect "that before he could be convicted of involuntary manslaughter, the State must prove him

guilty of gross negligence." After reviewing the line of cases in this State holding that a person causing the death of another by the negligent use of a deadly weapon is guilty of involuntary manslaughter, and the case of *State v. Hanahan, supra,* holding that the "deadly weapon" rule should be applied to an automobile, the Court held that defendant's request was properly refused. In that case the trial Judge permitted the jury to determine whether an automobile was a dangerous instrumentality and the Court observed that "the charge in this respect was more favorable to appellant and he has no ground of complaint thereabout." The *Dixon case* was followed in *State v. Staggs, supra,* 186 S. C. 151, 195 S. E. 130, and in *State v. Brown, supra,* 205 S. C. 514, 32 S. E. (2d) 825, 827. In the last mentioned case, the Court said: "It is the established rule in this jurisdiction that one who causes the death of another by the negligent use of a deadly weapon or instrumentality may be convicted of involuntary manslaughter. And it is further declared that one who uses an automobile on the highways without due care and caution (which is but negligence), and in violation of the statutes of the State, or the ordinances of a town or city, and thereby causes the death of a person, is guilty of manslaughter."

It is clear from the foregoing decisions that in respect to the degree of negligence necessary to establish involuntary manslaughter at common law, we have classified motor vehicles as dangerous instrumentalities and have applied the "deadly weapon" rule, which requires only simple negligence. We have refused, however, to apply this rule to instrumentalities not inherently dangerous. In *State v. Davis,* 128 S. C. 265, 122 S. E. 770, the defendant claimed that the injury resulting in the death of his wife was caused by his stumbling over a chair as he attempted to carry her to bed after she had fallen in an epileptic seizure. The trial Judge charged the jury that simple negligence on the part of the defendant would be sufficient to support a conviction of involuntary manslaughter. The Court held that this was error and that

more than ordinary negligence was required. It was there stated: "There may be circumstances connected with the homicide, such as the situation of the parties, the character of the instrumentality carelessly handled, and others, which may convert an act, otherwise one of simple negligence into gross or reckless negligence, and justify a conviction of manslaughter or even murder; but it was manifest error to charge that in every instance, regardless of the circumstances, an act of ordinary negligence will constitute manslaughter." Also, see *State v. Williams,* 131 S. C. 294, 127 S. E. 264.

It seems to be thoroughly settled by the foregoing decisions that where the instrument involved is not inherently dangerous, we follow the general rule requiring more than ordinary negligence to support a conviction for involuntary manslaughter, but hold that simple negligence causing the death of another is sufficient if the instrumentality is of such character that its negligent use under the surrounding circumstances is necessarily dangerous to human life or limb. This Court is also committed to the view that firearms and motor vehicles fall within the latter category. We shall not now undertake to develop the rationale of this distinction. It may perhaps be explained upon the theory that want of ordinary care in the handling of a dangerous instrumentality is the equivalent of culpable or gross negligence. This seems to be the conclusion reached by the Court of Appeals of Kentucky in *Held v. Commonwealth,* 183 Ky. 209, 208 S. W. 772.

We shall next consider the effect of the statutory offense of reckless homicide which was enacted in 1937. Section 29 of Act No. 175 of the 1937 Acts, 40 St. at L. 222. It is as follows: "When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of reckless homicide." Under the terms of Section 33 of the above Act, the punishment for this offense is "by a fine of not less

than One Thousand ($1,000.00) Dollars nor more than Five Thousand ($5,000.00) Dollars, or imprisonment for not more than five (5) years, or both."

The foregoing statute is now incorporated in the 1942 Code as Section 1616. The above mentioned offense of reckless homicide in identical form was reenacted when the Uniform Act Regulating Traffic on Highways was adopted in 1949. Section 56 of Act No. 281 of the Acts of 1949, 46 St. at L. 466.

It was distinctly held in *State v. Rachels*, S. C., 61 S. E. (2d) 249, 252, that the foregoing statute means "something more than the mere failure to exercise due care" and that "the offense denotes operation of a vehicle under such circumstances, and in such manner, as to show a wilful or reckless disregard of consequences." It will ·be noted that this is a greater degree of negligence than we have held necessary to support the common law offense of involuntary manslaughter where a dangerous instrumentality is involved. Ordinarily, it might be argued that the reckless homicide statute was designed as a substitute for, and has the effect of superseding, the common law offense of involuntary manslaughter in cases of death resulting from the operation of a motor vehicle. 50 Am. Jur., Statutes, Section 345; 12 C. J. page 186, 15 C. J. S., Criminal Law § 12; 16 C. J. page 67, 22 C. J. S., Criminal Law, § 24. *Cp. Phillips v. State,* 204 Ark. 205, 161 S. W. (2d) 747; *People v. Crow,* 48 Cal. App. (2d) 666, 120 P. (2d) 686. But the statute discloses a contrary intention. It provides that the section creating the offense of reckless homicide "shall not affect, impair or repeal" the statute fixing the punishment for involuntary manslaughter. Section 1616(29) of the 1942 Code. This provision was inserted with knowledge of the fact that we had held that simple negligence in the operation of an automobile was sufficient to support a conviction of involuntary manslaughter. The only reasonable construction of the statute is that the Legislature did not intend to

repeal the common law offense of involuntary manslaughter where death resulted from the operation of an automobile but, on the contrary, desired to preserve that offense as defined by this Court. The incentive for this action may have been knowledge on the part of the law-making body of the practical difficulties of obtaining convictions in automobile homicide cases.

It is apparent from the foregoing that we have a rather anomalous situation in this State. In automobile homicide cases, not involving the elements of murder, the solicitor may prosecute the accused for reckless homicide, in which event the State must show recklessness, or he may seek a conviction for involuntary manslaughter, in which event the State is only required to show simple negligence. Any remedy for this condition, however, must come from the Legislature.

We have reviewed at great length, perhaps too much so, the decisions in this State, as well as the authorities elsewhere, relating to involuntary manslaughter. This has been deemed necessary in deciding whether we should adhere to the rule that an automobile is an instrumentality of such character that simple negligence in its operation is sufficient to support the common law offense of involuntary manslaghter. It must be conceded that only scant support can be found for this rule in other jurisdictions. But public policy requires that due consideration should be given to the principle of *stare decisis*. The *Hanahan case* has withstood attack for over a quarter of a century. The rule there announced and followed in a long line of cases was sanctioned, impliedly at least, by the Legislature, when it enacted the offense of reckless homicide. Under all the circumstances mentioned, we think the wisest policy is to adhere to the simple negligence rule in automobile homicide cases. If a change or modification is desirable, it should come from the law-making body.

Mr. Justice Taylor and the writer desire to say that they regard the simple negligence rule in automobile homicide

cases as too harsh and if the question were one of original impression, they would not be in favor of adopting it.

All exceptions are overruled and the judgment affirmed.

FISHBURNE, STUKES and TAYLOR, JJ., concur.

BAKER, C. J., not participating.